**Jim Dale DAVIS, Plaintiff,**

v.

**R. POWELL, T. Borem, L. Small, K. Ours, Defendant.**

**Civil No. 10cv1891–CAB (RBB).**

United States District Court,
S.D. California.

Oct. 4, 2012.

Jim Dale Davis, Calipatria, CA, pro se.

Christopher H. Findley, Office of the Attorney General, San Diego, CA, for Defendants.

**ORDER (1) ADOPTING REPORT AND RECOMMENDATION AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

[Doc. Nos. 30, 35]

CATHY ANN BENCIVENGO, District Judge.

On October 6, 2011, plaintiff filed a Second Amended Complaint ("SAC"). [Doc.

No. 29.] On October 13, 2011, defendants filed a motion to dismiss the SAC. [Doc. No. 30.] On October 31, 2011, Plaintiff filed an opposition to the motion to dismiss. [Doc. No. 31.] On November 7, 2011, Defendants filed a reply to the opposition. [Doc. No. 33.] On July 25, 2012, Magistrate Judge Brooks prepared a Report and Recommendation ("Report") recommending that the motion to dismiss the SAC be granted in part and denied in part. [Doc. No. 35.] The Report also ordered that any objections were to be filed by August 24, 2012. [Report at 71.] To date, no objection has been filed, nor have there been any requests for an extension of time in which to file an objection.

A district court's duties concerning a magistrate judge's report and recommendation and a respondent's objections thereto are set forth in Rule 72(b) of the Federal rules of Civil Procedure and 28 U.S.C. § 636(b)(1). When no objections are filed, the district court is not required to review the magistrate judge's report and recommendation. The Court reviews *de novo* those portions of the Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* However, "[t]he statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003) (en banc) (emphasis in original). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Id.* In the absence of timely objection, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R.Civ.P. 72 advisory committee's note (cit-ing *Campbell v. U.S. Dist. Court,* 501 F.2d 196, 206 (9th Cir.1974)).

Here, neither party has timely filed objections to the Report. Having reviewed it, the Court finds that it is thorough, well reasoned, and contains no clear error. Accordingly, the Court hereby (1) **ADOPTS** Magistrate Judge Brooks' Report and Recommendation; and (2) **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss the SAC as set forth below.

Per Magistrate Judge Brook's Report and Recommendation, the Court **ORDERS AS FOLLOWS:**

(1) Plaintiff's references to violations of the California Code of Regulations are not separate causes of action. Therefore, Defendants' motion to dismiss this portion of count two is **GRANTED** without leave to amend.

(2) Plaintiff improperly includes several new causes of action in count two of his SAC. First, an amendment to include a retaliation claim in count two against Defendant Small for the addendum he approved on September 16, 2009, would not clearly be futile. This retaliation claim is properly asserted. Defendant Small's motion to dismiss this claim is **DENIED.** A retaliation claim against Defendant Small for the October 25, 2010 policy, however, would be futile; this claim shall not be considered. Therefore, Defendant Small's motion to dismiss this claim is **GRANTED** without leave to amend.

(3) Retaliation claims against Defendants Powell, Borem, and Ours for the September 2009 and October 2010 policies would also be futile. Their motion to dismiss both retaliation claims against them is **GRANTED** without leave to amend.

(4) Defendants Powell, Borem, and Ours's motion to dismiss the conspiracy causes of action against them in count two

is **GRANTED** without leave to amend; an amendment to include a conspiracy claim against Defendant Small would be futile, and the conspiracy claim against him is **DISMISSED** without leave to amend.

(5) Defendant Small's motion to dismiss the equal protection claim in count two regarding the September 16, 2009 policy addendum is **DENIED**. An amendment to include an equal protection claim against Powell, Borem, and Ours for this policy would be futile and is **DISMISSED** without leave to amend. Likewise, an amendment to include an equal protection cause of action against all Defendants based on the October 25, 2010 policy would be futile and is **DISMISSED** without leave to amend.

(6) The motion to dismiss the First Amendment and RLUIPA causes of action against all Defendants in count one is **DENIED**; in count two, the Defendants' motion to dismiss the First Amendment and RLUIPA claims is **GRANTED** without leave to amend.

(7) All of the Defendants are entitled to qualified immunity for the First Amendment claims against them. in count two, and their motion to dismiss Plaintiff's claim for civil damages on this basis is **GRANTED**. The Defendants are not, however, entitled to qualified immunity as to the First Amendment allegations in count one, and their motion to dismiss on this basis is **DENIED**.

(8) Defendant Ours, Powell, and Borem's motion to dismiss Plaintiff's claim for civil damages for the equal protection violation alleged in count two on qualified immunity grounds is **GRANTED**. Defendant Small is not immune from damages attributable to the equal protection claim

against him in count two for the September 2009 policy. His motion to dismiss on this ground is **DENIED**. Defendant Small is, however, entitled to qualified immunity for the equal protection claim against him in count two, focusing on the October 2010 addendum, and his motion to dismiss Plaintiff's claim for civil damages for this claim is **GRANTED**.

**IT IS SO ORDERED.**

**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF NO. 30]**

RUBEN B. BROOKS, United States Magistrate Judge.

Plaintiff Jim Dale Davis, a state prisoner proceeding pro se and in forma pauperis, filed a Complaint on August 31, 2010, pursuant to 42 U.S.C. § 1983 [ECF No. 1]. The Defendants filed a Motion to Dismiss Complaint, which was granted [ECF Nos. 17, 24–25]. On September 30, 2011, Davis filed a First Amended Complaint [ECF No. 26]. He subsequently sought leave to replace the second page of the First Amended Complaint with a different page [ECF No. 27]. The Court granted his request and instructed the Clerk of the Court to refile the First Amended Complaint with the replacement page as a separate docket entry; this new filing would constitute, and was docketed as, Davis's Second Amended Complaint, even though it was titled "Frist [sic] Amended Complaint" [ECF No. 28].

Plaintiff's Second Amended Complaint was filed on October 6, 2011, along with exhibits [ECF No. 29].[1] There, Davis ar-

---

1. Because the Second Amended Complaint and attachments are not consecutively paginated, the Court will cite to them using the page numbers assigned by the electronic case filing ("ECF") system. At times, Davis cites to the attachments using the page numbers designated in the exhibits. In these instances, the Court will also use the ECF system pagination.

gues in count one that Defendants violated the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") when they imposed a total ban on the purchase and receipt of prayer oil by inmates for fourteen months. (Second Am. Compl. 1, 3–8, ECF No. 29.) In count two, Plaintiff asserts that Defendants violated the Equal Protection Clause and retaliated against him when they implemented an addendum to Department Operations Manual ("DOM") supplement number 54030.7.1, which provided that certain religious items ordered by inmates would be counted as a quarterly package. (*Id.* at 9–10; *see id.* Attach. # 2 Ex. U, at 39.) Warden Small signed the addendum on September 16, 2009. (*Id.*) [2] All Defendants allegedly. discriminated against Davis because the religious items described in the addendum are purportedly used only by practitioners of the Muslim faith. (Second Am. Compl. 9–10, ECF No. 29.) Plaintiff contends Defendants retaliated and discriminated again on October 25, 2010, when they implemented a policy that prayer oil orders from the vendor, Union Supply, would not count as a quarterly package, but orders from nonapproved vendors would. (*Id.* at 10.)

On October 13, 2011, the four named Defendants, Powell, Borem, Small, and Ours, filed a Motion to Dismiss Second Amended Complaint, which included a Memorandum of Points and Authorities [ECF No. 30]. Davis filed his "Objection to Defendants Motion to Dismiss Second Amended Compliant [sic]" on October 31, 2011, which the Court construes as an Opposition [ECF No. 31]. On November 7, 2011, Defendants' Reply was filed [ECF No. 33].

The Court has reviewed the Second Amended Complaint and attachments, De-fendants' Motion to Dismiss and attachment, Davis's Opposition, and the Defendants' Reply. The Motion to Dismiss is suitable for resolution on the papers. *See* S.D. Cal. Civ. R. 7.1(d)(1). For the reasons stated below, the district court should **GRANT** in part and **DENY** in part the Defendants' Motion.

## I. FACTUAL ALLEGATIONS

Plaintiff is incarcerated at Calipatria State Prison. (Second Am. Compl. 1, ECF No. 29.) In count one, Davis asserts that he has been a practicing Muslim and has used prayer oil for sixteen years. (*Id.* at 3.) Plaintiff posits that using prayer oil is an "obligatory act that [he] must do during the preformance [sic] of his religion." (*Id.* (citing *id.* Attach. # 1 Ex. A, at 4).) On August 11, 2009, Defendant Powell and the Islamic chaplain issued a religious chrono listing the religious articles Davis was authorized to keep in his cell, which included eight ounces of prayer oil per quarter. (*Id.* at 3–4 (citing *id.* Attach. # 1 Exs. B, C).) According to Plaintiff, the chaplain signed a religious item approval list allowing Davis to purchase prayer oil from Halalco Books, a vendor on Calipatria's authorized vendor list. (*Id.* at 4 (citing *id.* Attach. # 1 Ex. D).) Davis alleges that on October 9, 2009, Halalco Books sent his eight-ounce prayer oil order to Calipatria with the approval form on the box; Defendant Borem received the order sometime in October, but failed to forward the package to Plaintiff. (*Id.* at 4, 7 (citing *id.* Attach. # 1 Ex. E, at 21).)

Davis maintains that he waited several weeks for his prayer oil before submitting an inmate grievance, to which prison officials never responded. (*Id.* at 4.) On December 22, 2009, Plaintiff submitted another grievance requesting that officials

---

**2.** Although Davis has sued Defendant "L. Smalls," the Court construes this as a typo-graphical error, as "L. Small" has appeared as one of the Defendants moving to dismiss.

deliver the prayer oil; the grievance was denied at the informal level on January 5, 2010, because the "Hazmat Specialist," Defendant Ours, had "denied the introduction of oil into the prison." (*Id.* (citing *id.* Attach. # 1 Ex. F).) Plaintiff alleges his subsequent appeals were denied at all levels; at the director's level, it was determined that "[t]he oils were appropriately confiscated as it was determined they pose a fire, health, and safety hazard." (*Id.*; *see id.* Attach. # 1 Ex. G, at 27.)

Defendant Ours allegedly never issued a memorandum explaining why the oil was hazardous, and the decision was not supported by any documentation or legitimate reason. (Second Am. Compl. 4–5, ECF No. 29.) Davis maintains that on February 3, 2010, Defendant Borem sent Plaintiff a letter indicating that his oil had been returned to Halalco and that Defendants Ours, Small, and Powell had concluded that prayer oil would no longer be allowed at Calipatria because it posed a fire, health, and safety hazard. (*Id.* at 5 (citing *id.* Attach. # 2 Ex. H).) In the letter, Borem explained that the decision was based on the fire rating information on the "Materials Safety Data Sheet" ("MSDS"), but he did not identify the MSDS or where he obtained it. (*Id.*)

Davis argues that from August 11, 2009, to October 16, 2010, there was a "total ban" on the purchase and receipt of prayer oil by inmates, denying him a "critical part" of his religion for fourteen months. (*Id.*) Defendants' actions were allegedly without any penological justification because if they followed protocol, they would have known that the prayer oil from Halalco Books complied with Calipatria's hazardous materials standards. (*Id.*)

Davis contends that years earlier, on November 14, 2003, Defendant Ours sent a memorandum to "department heads" regarding the "Material Safety Sheet Binders," along with a copy of the "Calipatria

State Prison Hazardous Communication Plan." (*Id.* at 6 (citing *id.* Attach. # 2 Ex. I).) The plan provided that a material is "combustible" if its flash point is 100 degrees Fahrenheit and above, and a material is "flammable" if its flash point is between twenty and 100 degrees Fahrenheit. (*Id.*) Plaintiff asserts that the prayer oil provided by Halalco Books has a flash point between 189 and 195 degrees Fahrenheit and therefore is not flammable. (*Id.* (citing *id.* Attach. # 2 Ex. J).) In comparison, pink hand soap has a flash point of 212 degrees, and pink skin cleanser has a flash point of 200 degrees. (*Id.* (citing *id.* Attach. # 2 Exs. K, L).) Davis argues that Defendants therefore knew that the Halalco prayer oil complied with Calipatria's hazardous materials standards, but they still banned the oil. (*Id.*)

The Plaintiff contends that on July 12, 2010, the associate warden responded to inmate correspondence and wrote, "Warden McEwen and Calipatria staff have reviewed the matter, and find that there is no compelling reason to deny the oil from the vendors that have been approved by the Institution in the past." (*Id.* Attach. # 2 Ex. M, at 22; *see* Second Am. Compl. 6–7, ECF No. 29.) Davis further asserts that during the total ban on prayer oil, he was never supplied an alternative prayer oil vendor. (*See* Second Am. Compl. 7, ECF No. 29.) Plaintiff states that while prison officials ultimately provided the alternative vendor, Union Supply, this did not occur until August 1, 2010. (*Id.* (citing *id.* Attach. # 2 Ex. O).)

On July 14, 2010, Davis received approval from the Islamic chaplain to order prayer oil from Halalco Books. (*Id.* at 8 (citing *id.* Attach. # 2 Ex. R).) Halalco shipped Plaintiff a back order five days later, and on July 27, 2010, Halalco shipped his "current order." (*Id.* (citing *id.* Attach. # 2 Ex. S).) Plaintiff insists that the Defen-

dants received the July 27, 2010 order, but did not forward the oil to him until October 16, 2010. (*Id.*) Defendant Borem returned one of Plaintiff's prayer oil orders to Halalco as recently as January 18, 2011, even though Borem knew Halalco was an approved vendor. (*Id.* (citing *id.* Attach. # 2 Ex. T).) As a result, Davis maintains that Defendants Powell, Borem, Small, and Ours violated RLUIPA and the First Amendment by denying him access to Islamic prayer oil without penological justification. (*See id.* at 3–8.)

In count two, Davis alleges that Defendants conspired to force him to purchase prayer oil from their preferred vendor, Union Supply, instead of from Halalco Books, another approved Islamic vendor. (*Id.* at 9.) On September 16, 2009, Warden Small issued an addendum to DOM supplement 54030. (*Id.*) The addendum provided that when an inmate received a package from a religious specialty vendor, it would be counted as a regular quarterly personal package. (*Id.* Attach. # 2 Ex. U, at 39.) Davis argues that the addendum discriminates against him and other Muslim prisoners because it only lists Muslim religious articles. (*See* Second Am. Compl. 9, ECF No. 29.) The addendum also violates section 3190(i)(4) of the California Code of Regulations ("CCR"), title 15, and was issued in retaliation for Davis's assertion of his First Amendment rights. (*Id.*) Thirteen days later, on September 29, 2009, Plaintiff and other Muslim inmates filed a group appeal contesting the discriminatory addendum, but it was denied. (*Id.* (citing *id.* Attach. # 2 Ex. V, at 41–45).)

The Plaintiff further argues that Defendants retaliated again on October 25, 2010, when officials issued another addendum to DOM supplement 54030, "stating that if Plaintiff ordered prayer oils from Union Supply it would not be counted as a quarterly package but if Plaintiff used a nondepartmentally approved vendor it would be counted as a quarterly package." (*Id.* at 10.)[3] Davis complains that the provisions penalize him because packages from Halalco, his preferred Islamic vendor, are treated as quarterly packages, but packages from Union Supply are not. (*See id.*) Therefore, Defendants violated RLUIPA, the First Amendment, section 3190(i)(4) of the California Code of Regulations, and the Equal Protection Clause. (*Id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. *Motions to Dismiss for Failure to State a Claim*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). "The old formula—that the complaint must not be dismissed unless it is beyond doubt without merit—was discarded by the *Bell Atlantic* decision *[Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ]." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir.2008).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court must accept as true all material allegations in the complaint, as

---

**3.** Although Plaintiff cites to "Exhibit W," there are no exhibits beyond "Exhibit V" attached to the Second Amended Complaint or otherwise before the Court.

well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir.2004) (citing *Karam v. City of Burbank,* 352 F.3d 1188, 1192 (9th Cir.2003)); *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995); *N.L. Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

■ The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *See Bell Atl. Corp. v. Twombly,* 550 U.S. at 563 n. 8, 127 S.Ct. 1955. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001) (citing *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988)).

■ The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian,* 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted); *See Halkin v. VeriFone, Inc.,* 11 F.3d 865, 868 (9th Cir.1993); *see also Cholla Ready Mix, Inc.,* 382 F.3d at 973 (quoting *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir. 1994)) (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[ ]"). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

■ In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings. *Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998); *Jacobellis v. State Farm Fire & Cas. Co.,* 120 F.3d 171, 172 (9th Cir.1997); *Allarcom Pay Television Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider,* 151 F.3d at 1197 n. 1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). *Id.* (citing *Harrell v. United States,* 13 F.3d 232, 236 (7th Cir.1993)).

### B. *Standards Applicable to Pro Se Litigants*

■ Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992). In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.; see also Jones v. Cmty. Redev. Agency,* 733 F.2d 646, 649 (9th Cir.1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones,*

733 F.2d at 649 (internal quotation omitted).

Nevertheless, the Court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995)). Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi,* 839 F.2d at 623–24. But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles,* 221 F.3d 1074, 1077 (9th Cir.2000).

## C. *Stating a Claim Under 42 U.S.C. § 1983*

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West 2003); *Shah v. County of Los Angeles,* 797 F.2d 743, 746 (9th Cir.1986).

## III. DEFENDANTS' MOTION TO DISMISS

As to count one, Defendants Small, Powell, Borem, and Ours argue that Davis fails to state a claim for relief under the First Amendment because the temporary ban on prayer oil was reasonably related to legitimate penological interests in not allowing flammable materials into prison cells and controlling inmate inventory. (*See* Mot. Dismiss Attach. # 1 Mem. P. & A. 5–7, ECF No. 30.) The Defendants also maintain that Davis fails to state a claim for relief under RLUIPA because regulating flammable prayer oil furthers prison safe-

ty, which is a compelling governmental interest and is the least restrictive means of achieving safety. (*Id.* at 10–11.)

With regard to count two, the four Defendants argue that Davis's claims against them fail because he was not precluded from ordering prayer oil; rather, he was merely required to order prayer oil as part of a quarterly package. (*Id.* at 7–8.) Limiting inmate inventory to reduce contraband, theft, bartering, and gambling is a legitimate penological interest. (*Id.* at 8.) Plaintiff also does not allege a RLUIPA allegation, Defendants assert, because requiring Davis to order religious supplies as a quarterly package did not place a substantial burden on his religious practice. (*Id.* at 11–12.) Plaintiff does not state an equal protection claim because he fails to plead facts sufficient to show that the provisions in the policy addendum were discriminatory. (*Id.* at 12–14.) Further, Defendants Powell, Borem, and Ours urge that the First Amendment, Fourteenth Amendment, and RLUIPA causes of actions fail because they are conclusory and lack factual support. (*Id.* at 14.)

Finally, the Defendants argue that they are entitled to qualified immunity from liability on Davis's First and Fourteenth Amendment claims. (*Id.* at 15–16.)

## A. *Violations of the California Code of Regulations*

In count two of the Second Amended Complaint, Davis alleges that the Defendants' conduct violated "RLUIPA and the [First] Amendment and Equal Treatment Clause." (Second Am. Compl. 9, ECF No. 29.) The gravamen of Plaintiff's allegations is that the Defendants discriminated against him based on his religion. (*See* id. at 9–10.) Davis also states that Defendants' conduct violated section 3190(i)(4) of the California Code of Regulations. (*Id.* at 10.) Section 3190(i) provides that inmates

shall be permitted special purchases of authorized personal items from locally-approved vendors, and staff must ensure that approved vendor catalogs and order forms are available to qualifying inmates. Cal. Code Regs. tit. 15, § 3190(i). Special purchase items include "[r]eligious [i]tems subject to approval by institutional chaplain and designated custody staff." *Id.* § 3190(i)(4).

 Plaintiff cannot assert an independent cause of action based on the purported violation of section 3190(i) of the California Code of Regulations. "The existence of regulations such as these governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages based on the violation of the regulations." *K'napp v. Adams,* No. 1:06–cv–01701–LJO–GSA (PC), 2009 WL 1292347, at *4, 2009 U.S. Dist. LEXIS 38682, at *12 (E.D.Cal. May 7, 2009). There is no implied private right of action under title fifteen of the California Code of Regulations. *Id.* at *4–5, 2009 U.S. Dist. LEXIS 38682 at *12–13. Because Davis's asserted violation of section 3190(i) fails to state a claim for relief in count two, the Defendants' Motion to Dismiss this portion of count two should be **GRANTED.**

## B. *Unauthorized Claims in Second Amended Complaint*

Under Federal Rule of Civil Procedure 15, a party may amend its pleading within twenty-one days of service once as a matter of course. Fed.R.Civ.P. 15(a). Thereafter, a party must obtain leave of court or written consent from the opposing party. Fed.R.Civ.P. 15(a)(2). Here, all of Davis's claims in his Complaint were dismissed, and he was only given leave to amend his RLUIPA and First Amendment causes of action. (Report & Recommendation 38–39, ECF No. 24; *see* Order 2, ECF No.

25.) Plaintiff was not given leave to add additional claims. (*Id.*) Nevertheless, in his Second Amended Complaint, Davis improperly includes new allegations against the Defendants for retaliation, conspiracy, and equal protection.

 "Although an amendment filed without leave of court, when leave is required, has no legal effect, the court has discretion to treat the amendment as properly filed if the court would have granted leave to amend had leave been sought." *Taylor v. City of San Bernardino,* No. EDCV 09–240–MMM (MAN), 2010 WL 5641065, at *7, 2010 U.S. Dist. LEXIS 140060, at *19–20 (C.D.Cal. Oct. 12, 2010) (citing *Ritzer v. Gerovicap Pharm. Corp.,* 162 F.R.D. 642, 644–45 (D.Nev.1995); *Brockmeier v. Solano Cnty. Sheriff's Dep't,* No. CIV S–05–2090 MCE EFB PS, 2007 WL 1521074, at *1, 2007 U.S. Dist. LEXIS 40580, at *1 (E.D.Cal. May 21, 2007)). Indeed, the Ninth Circuit has "repeatedly stressed that the court must remain guided by 'the underlying purpose of Rule 15 ... to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Lopez,* 203 F.3d at 1127 (citation omitted). Whether to give leave to amend rests in the sound discretion of the district court. *Pisciotta v. Teledyne Indus. Inc.,* 91 F.3d 1326, 1331 (9th Cir.1996).

 Courts typically consider five factors when determining whether to grant a motion for leave to amend: (1) bad faith by the moving party, (2) undue delay in seeking leave to amend, (3) prejudice to the opposing party, (4) futility of an amendment, and (5) whether the plaintiff has previously amended the complaint. *Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir.2004). " 'Futility alone can justify the denial of a motion amend.'" *Id.* (quoting *Nunes v. Ashcroft,* 348 F.3d 815, 818 (9th Cir.2003)). But "[p]rejudice to the opposing party is the most important fac-

tor." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1996) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). "Undue delay is delay that prejudices the nonmoving party or imposes unwarranted burdens on the court." *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 08–cv–01086–AWI (SMS), 2011 WL 3328398, at *2, 2011 U.S. Dist. LEXIS 84694, at *5 (E.D.Cal. Aug. 2, 2011) (citing *Mayeaux v. Louisiana Health Serv. and Indem. Co.*, 376 F.3d 420, 427 (5th Cir.2004)). Leave to amend "is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987).

### 1. Retaliation

In count two, Davis alleges that the Defendants retaliated against him for exercising his First Amendment rights. (Second Am. Compl. 9, ECF No. 29.) Specifically, they implemented a discriminatory policy on September 16, 2009, that penalized inmates who ordered Muslim-specific religious items by requiring that the order count as a quarterly package. (*Id.*) Davis states that Defendants retaliated again on October 25, 2010, when they indicated that if Plaintiff ordered prayer oil from Union Supply, it would not be counted as a quarterly package, but if he used a nonapproved vendor, it would. (*Id.* at 10.) Defendants do not address Davis's retaliation claims in their Motion to Dismiss or Reply. In his Opposition, Plaintiff asserts, "Defendants conceded Plaintiff['s] retaliation argument on [page nine] of the SAC. Plaintiff will not further argue retaliation in this objection to Defendants['] (DMOD) because of Defendants['] concession." (Opp'n 9, ECF No. 31.)

Because Plaintiff was not given leave to add new causes of action and has included new retaliation claims without leave of court, he has not complied with Federal Rule of Civil Procedure 15(a). As discussed previously, the Court has discretion to treat the retaliation allegations as properly included if it would have granted Davis leave to add these claims had leave been sought. *See Taylor*, 2010 WL 5641065, at *6–7, 2010 U.S. Dist. LEXIS 140060, at *19. The Court will look to five factors to determine whether it would have given Plaintiff leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) previous amendments. *Johnson*, 356 F.3d at 1077.

Davis was given leave to amend his First Amendment and RLUIPA claims. (*See* Report & Recommendation 38–39, ECF No. 24; Order 1–2, ECF No. 25.) He ignored the Court's order and included additional claims without authorization. This is some evidence of bad faith. *See id.* Plaintiff presumably knew of Defendants' conduct when he filed his Complaint on August 31, 2010, but failed to characterize the conduct as retaliatory until he filed his Second Amended Complaint more than one year later on October 13, 2011. Davis's delay and bad faith may suffice to deny a motion for leave to amend. *BNSF Ry. Co.*, 2011 WL 3328398, at *2, 2011 U.S. Dist. LEXIS 84694, at *5. Nonetheless, Plaintiff's delay is not undue because it will not prejudice the Defendants or impose an unwarranted burden on the court. *See id.* Even if these considerations are ignored, an amendment to include retaliation claims may be futile.

■■■■■ "A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). The Constitution provides protections from "deliberate retaliation" by government officials for an indi-

vidual's exercise of First Amendment rights. *See Vignolo v. Miller*, 120 F.3d 1075, 1077–78 (9th Cir.1997); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989). Because retaliation by prison officials may chill an inmate's exercise of legitimate First Amendment rights, retaliatory conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. *See Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir.1989). Yet, retaliation claims are reviewed with particular care because they are prone to abuse by prisoners. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).

 A plaintiff suing prison officials pursuant to § 1983 for retaliation must allege sufficient facts that show that (1) "the retaliated-against conduct is protected," (2) the "defendant took adverse action against plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the act "would chill or silence a person of ordinary firmness," and (5) the conduct does not further a legitimate penological interest. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir.2012). A plaintiff can allege retaliatory intent with a time line of events from which retaliation can be inferred. *See id.* (citations omitted). If the plaintiff's exercise of his constitutional rights was not chilled (factor four), he must allege that the defendant's actions caused him to suffer more than minimal harm. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 n. 11 (9th Cir.2005). *But see Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir.1999). The test is objective—whether an official's acts would " 'chill or silence a person of ordinary firmness from future First Amendment activities.' " *Mendocino Envtl. Ctr.*, 192 F.3d at 1300 (citation omitted).

### a. The September 16, 2009 addendum

 Davis alleges that Defendants retaliated against him initially by issuing an addendum to the Department Operations Manual (DOM) on September 16, 2009, that implemented a discriminatory policy requiring that only orders for Muslim religious items would be counted as quarterly packages. (Second Am. Compl. 9, ECF No. 29.) The Plaintiff does not allege any facts showing that Defendants Powell, Borem, and Ours were responsible for this policy, and an amendment to include a retaliation claim against them would be futile. An amendment to include a retaliation claim against Warden Small, however, is not clearly futile. As to Defendant Small, the elements of a retaliation claim have been pleaded.

First, Davis has asserted that Warden Small retaliated against him for engaging in the constitutionally protected conduct of obtaining items required to practice his religion. (Second Am. Compl. 9, ECF No. 29); *See Watison*, 668 F.3d at 1114 ("[T]he plaintiff must allege that the retaliated-against conduct is protected."); *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir.1987) ("The right to exercise religious practices and beliefs does not terminate at the prison door.").

Second, the facts pleaded are that Defendant Small took adverse action against Davis and other Muslim inmates by instituting a discriminatory policy making it more burdensome to obtain items required to practice their religion or practice it as easily as inmates of different faiths. *Watison*, 668 F.3d at 1114. The policy essentially forced Plaintiff to choose between ordering Muslim religious items or other items, while other inmates could order both. (*See* Second Am. Compl. Ex. U, at 39, ECF No. 29.)

Third, Davis has asserted a causal link between the adverse action and the pro-

tected conduct. *Emeldi v. Univ. of Oregon,* 673 F.3d 1218, 1226 (9th Cir.2012) (stating that at the pleading stage, a plaintiff need only assert that the protected activity and the adverse action are not completely unrelated). Plaintiff contends that the warden's retaliation was a substantial or motivating factor behind the quarterly package policy, as shown by the inherent discriminatory nature of the addendum. *Id.* at 1227 (noting that evidence of animus is relevant to proving causation); *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir.2009) ("It is thus undisputed that the warning [the adverse action] was motivated by [the inmate's] protected conduct [disrespectful language in a prisoner's grievance]. . . ."). The policy lists religious articles that Davis insists are specific to the Muslim faith, which, if true, supports the claim that Small acted to retaliate. *See Coghlan v. American Seafoods Co. LLC.,* 413 F.3d 1090, 1095 n. 6 (9th Cir. 2005). (stating that "animus to the class to which the plaintiff belongs" has been treated as direct evidence).

The alleged chronology of events further supports a retaliatory intent. *See Emeldi,* 673 F.3d at 1226. Small signed and issued the policy purportedly targeting Davis and other Muslim inmates on September 16, 2009; thirteen days later, on September 29, 2009, Plaintiff and other inmates filed a group appeal challenging the policy as discriminatory. (Second Am. Compl. 9, ECF No. 29; *See id.* Attach. # 2 Ex. V, at 41–45.) On February 3, 2010, approximately five months later, all religious prayer oil at Calipatria was banned. (Second Am. Compl. 9, ECF No. 29; *See id.* Attach. # 2 Ex. H, at 2.)

Fourth, Davis has pleaded facts indicating that Small's policy would chill a person of ordinary firmness from practicing his religion. *Watison,* 668 F.3d at 1114. A Muslim inmate would be deterred from ordering Muslim articles to practice his religion because his orders would count as quarterly packages; in contrast, orders for religious items by inmates practicing other religions would not count as quarterly packages. *See Brodheim,* 584 F.3d at 1271. Whether Davis was actually chilled in his attempts to obtain prayer oil is inconsequential. *Mendocino Envtl. Ctr.,* 192 F.3d at 1300 (concluding it would be unjust to allow a defendant to escape liability because an unusually determined plaintiff persists in the protected activity).

Finally, Davis alleges that the adverse action did not reasonably further a legitimate penological interest. (*See* Second Am. Compl. 9–10, ECF No. 29); *Watison,* 668 F.3d at 1114. Defendants argue that the addendum was adopted to investigate whether prayer oil is flammable and to regulate inmate purchases and property to prevent theft, bartering, and other conduct that may be a threat to the institution, which are legitimate interests. (*See* Mot. Dismiss Attach. # 1 Mem. P. & A. 7, 11–12, ECF No. 30); *see Charles v. Verhagen,* 220 F.Supp.2d 937, 953 (W.D.Wis.2002) (finding that reducing administrative costs, streamlining searches, and monitoring inmate property are legitimate interests). Plaintiff's claim, however, is that the policy did not further any interest because Small implemented it to retaliate against Plaintiff for exercising his right to practice his religion by ordering prayer oil. *See Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985) (finding that plaintiff had adequately asserted that the retaliatory acts were not a reasonable exercise of authority and did not further any legitimate correctional goal). Without evidentiary support in the record, argument of defense counsel is insufficient to establish that the September 16, 2009 addendum is a regulation of the purchase of prayer oil that furthers a legitimate penological interest.

Although Davis generally asserts that all Defendants retaliated, the alleged facts are that Warden Small set the policy. Defendant Small did not move to dismiss Plaintiff's retaliation claim. Even though it does not appear that Davis has exhausted this cause of action, it may not be too late for him to do so, unless this policy was superceded by Small's October 25, 2010 addendum. Based on these factors, an amendment to include a retaliation claim against Warden Small for the allegedly discriminatory addendum he approved on September 16, 2009, would not clearly be futile. *Johnson*, 356 F.3d at 1077. The district court therefore should treat this retaliation claim against Defendant Small as properly asserted. But the retaliation claim against Powell, Borem, and Ours should not be treated as properly included in the Second Amended Complaint because leave to add the claim against these three Defendants should not be granted.

#### b. The October 25, 2010 addendum

Plaintiff contends that the Defendants retaliated again on October 25, 2010, when they "issued another copy of the policy addendum" indicating that if he ordered prayer oil from Defendants' vendor, Union Supply, it would not count as a quarterly package; however, an order from a nonapproved vendor would count as a specialty package. (Second Am. Compl. 10, ECF No. 29).

Davis has not alleged that ordering religious items from his preferred vendor without it counting as a quarterly package is a constitutionally protected activity. *Watison*, 668 F.3d at 1114. Plaintiff can purchase prayer oil from an approved vendor without it counting as a quarterly package. Notably, there is no alleged meaningful religious difference between the prayer oil sold by Union Supply and nonapproved vendors. *See Kensu v. Cason*, No. 1:91–CV–300, 1996 U.S. Dist. LEXIS 5468, at *45–47 (W.D.Mich. Mar.

29, 1996) (approving a prison policy requiring that religious oil be ordered from the state-approved vendor because the plaintiff failed to show any religious difference between Muslim and Buddhist oil); *see also Jesus Christ Prison Ministry v. Cal. Dep't Corr.*, 456 F.Supp.2d 1188, 1205 (E.D.Cal. 2006) (finding that a substantial burden was placed on plaintiff's religious exercise when unique worship materials were unavailable through any approved vendors).

Plaintiff, however, alleges that he is concerned that the prayer oil from Union Supply may be contaminated, but he can trust that the oil from his vendor is not. (Second Am. Compl. 10, ECF No. 29.) Nevertheless, a conclusory allegation of contamination is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. at 683, 129 S.Ct. 1937 (concluding that "complaint does not contain any factual allegation sufficient to plausibly suggest [officials'] discriminatory state of mind[ ]"); *Kensu*, 1996 U.S. Dist. LEXIS 5468, at *45–47 (discussing failure to establish any meaningful religious differences between Muslim or Buddhist oil). Davis cannot allege that ordering prayer oil from his vendor of choice is a constitutionally protected activity. *See Thomas v. Little*, No. 07–1117–BRE/egb, 2009 WL 1938973, at *5, 2009 U.S. Dist. LEXIS 57568, at *15–18 (W.D.Tenn. July 6, 2009) (discussing approved-vendor policy and determining that because the prayer oil that plaintiff could buy from Union Supply was not alleged to be "unfit for his religious ritual," the desire to order from his preferred vendor was inconsequential under RLUIPA).

Because Davis has the option of obtaining religious items from an approved vendor, the adverse action element is lacking. In this context, a policy that orders from unapproved vendors are counted as quarterly packages does not burden Davis's religious exercise. *See id.* at *5, 2009 U.S.

Dist. LEXIS 57568 at *17. But cf. *Brodheim*, 584 F.3d at 1270. ("Thus, the mere threat of harm [transfer or disciplinary action] can be an adverse action.") The October 25, 2009 addendum is not analogous to the adverse action in *Brodheim*.

Davis has not asserted facts establishing a causal connection between protected conduct and the claimed adverse action—here, the October 25, 2010 addendum. *See Watison*, 668 F.3d at 1114. The only exhibit on which Plaintiff relies, "Exhibit W," is not attached to the Second Amended Complaint or otherwise before the Court. (*See* Second Am. Compl. 10, ECF No. 29.) The October 2010 policy does not indicate animus toward Muslim inmates because they can order from Union Supply without penalty, the same as all other inmates. *See Coghlan*, 413 F.3d at 1095 n. 6. (discussing animus towards a class to which the plaintiff belongs as evidence of discrimination against the plaintiff).

Plaintiff fails to allege the action would chill a person of ordinary firmness from future conduct or that Davis suffered some other harm. *Watison*, 668 F.3d at 1114; *Brodheim*, 584 F.3d at 1269. Davis could either order religious items from an approved vendor or from his preferred vendor and have it count as a quarterly package. A reasonable inmate would not feel deterred from ordering prayer oil under these circumstances. *See Brodheim*, 584 F.3d at 1271.

Finally, Plaintiff fails to assert that the Defendants' implementation of the October 25, 2010 policy did not further a legitimate penological interest. *See Watison*, 668 F.3d at 1114.

An amendment to include a retaliation claim based on the October 25, 2010 addendum would be futile as to all Defendants. *Johnson*, 356 F.3d at 1077. Moreover, it is unclear whether Davis has exhausted this retaliation cause of action.

The claim should not be treated as properly asserted.

### 2. Conspiracy

Similarly, Davis includes new claims for conspiracy in count two without leave of court or the consent of the Defendants. Fed.R.Civ.P. 15(a)(2). Davis alleges that all of the Defendants conspired to violate his constitutional rights when they attempted to force him to purchase prayer oil from their preferred vendor, Union Supply. (Second Am. Compl. 9, ECF No. 9.) The conspiracy allegations are not further explained or elaborated. (*See id.*) In their Motion, Defendants Powell, Borem, and Ours argue that Plaintiff only makes a conclusory assertion that they conspired to violate his rights. (Mot. Dismiss Attach. # 1 Mem. P. & A. 14, ECF No. 30.) Defendant Small does not move to dismiss the conspiracy claim. (*See id.*)

Although Davis was not given leave to add new causes of action, the Court will consider the claims if it would have granted Plaintiff leave to amend if he properly sought leave. *See Taylor*, 2010 WL 5641065, at *6–7, 2010 U.S. Dist. LEXIS 140060, at *19. The Court will consider bad faith, undue delay, prejudice, futility of amendment, and prior amendments. *Johnson*, 356 F.3d at 1077. As discussed above, Davis exceeded the scope of the Court's order granting him leave to amend his First Amended Complaint. (*See* Report & Recommendation 34–38, ECF No. 24; Order 1–2, ECF No. 25.) This is evidence of bad faith. Davis knew of the Defendants' actions when he filed his Complaint on August 31, 2010, but he failed to allege a conspiracy until he filed his Second Amended Complaint on October 13, 2011. The delay is not undue because it will not impose an unusual burden on the Court or prejudice the Defendants. *See BNSF Ry. Co.*, 2011 WL 3328398, at *2,

2011 U.S. Dist. LEXIS 84694, at *5. Because Defendants Powell, Borem, and Ours move to dismiss the conspiracy claim, if their Motion should be granted because Davis has failed to state a claim for relief, the futility of amending dictates that the claim not be considered.

■■■■ To state a conspiracy claim under § 1983, a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation. *Garcia v. Grimm*, No. 1:06–cv–225–WQH (PCL), 2011 WL 817426, at *9, 2011 U.S. Dist. LEXIS 20522, at *24 (S.D.Cal. Mar. 2, 2011); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir.1999). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989). Because conspiracies are secret agreements, "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." *Gilbrook*, 177 F.3d at 856–57.

■■■ To plead a claim of conspiracy under § 1983, plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. *Miller v. California*, 355 F.3d 1172, 1177 n. 3 (9th Cir.2004); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir.1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir.1989). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey*, 673 F.2d at 268; *see Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977).

Courts in the Ninth Circuit have required a plaintiff alleging a conspiracy to violate civil rights to state specific facts to support the existence of the claimed conspiracy. *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir.2004) (discussing conspiracy claim under § 1985); *Harris v. Roderick*, 126 F.3d 1189, 1195–96 (9th Cir.1997) (applying heightened pleading standard to *Bivens* conspiracy claims); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989) ("To state a claim for conspiracy to violate one's constitutional rights under § 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."); *accord Bashkin v. Hickman*, No. 07cv0995–LAB(CAB), 2008 WL 183696, at *2, 2008 U.S. Dist. LEXIS 4326, at *4 (S.D.Cal. Jan. 17, 2008).

■■■ First, Davis must allege an agreement between the Defendants to deprive him of a constitutional right. *Grimm*, 2011 WL 817426, at *9, 2011 U.S. Dist. LEXIS 20522, at *24. The agreement need not be overt and can be inferred from the actions of the Defendants. *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir.2010). The Plaintiff's claim is that all of the Defendants "conspired to force him to purchase prayer oils" from their vendor. (Second Am. Compl. 9, ECF No. 29.) A conclusory statement that all the Defendants conspired to force Davis to purchase oil from their vendor is insufficient. *See Crowe*, 608 F.3d at 440; *Secress v. Ullman*, 147 Fed.Appx. 636, 638 (9th Cir. 2005).

Second, Davis must allege that the Defendants committed an overt act in furtherance of the conspiracy. *Grimm*, 2011 WL 817426, at *9, 2011 U.S. Dist. LEXIS 20522, at *24. There is no indication that the approved vendor, Union Supply, did not sell authentic prayer oil. Plaintiff does not attribute any specific acts to the Defendants, other than his blanket accusation

that they "conspired to force" him to order oil from their vendor. (*See* Second Am. Compl. 9–10, ECF No. 29.) To the extent Plaintiff claims they conspired to force him to use their preferred vendor by issuing the October 25, 2010 addendum, an overt act that caused injury is adequately alleged. *See Gibson v. United States,* 781 F.2d 1334, 1340 (9th Cir.1986).

Finally, to state a claim for conspiracy, Plaintiff must show that he was deprived of a constitutional right. *Garcia v. Grimm,* 2011 WL 817426, at *9, 2011 U.S. Dist. LEXIS 20522, at *24. Davis does not assert facts sufficient to establish a constitutional right to order religious items from his preferred vendor. *See generally Thomas v. Little,* 2009 WL 1938973, at *4–5, 2009 U.S. Dist. LEXIS 57568, at *15–18 (discussing approved-vendor policy under First Amendment and RLUIPA).

Defendants Powell, Borem, and Ours have shown that their Motion to Dismiss the improperly alleged conspiracy claims against them should be **GRANTED.** Similarly, a conspiracy claim against Warden Small would be futile because Davis has not presented facts illustrating that Defendant made an agreement with another to deprive Davis of a constitutional right and acted in furtherance of that agreement. *See Gilbrook,* 177 F.3d at 856–57. The conspiracy cause of action alleged against Small is improperly included and should be **DISMISSED.**

### 3. Equal Protection

Likewise, Davis improperly includes a new equal protection claim in his amended pleading without leave to do so. (Report & Recommendation 38–39, ECF No. 24; *see* Order 2, ECF No. 25.) He argues in count two that the September 16, 2009 addendum counting Muslim religious items as quarterly packages is discriminatory. (Second Am. Compl. 9, ECF No. 29.) The policy only mentions "prayer oil, [a] prayer rug, spiritual items, beads, etc.," which Davis maintains are only Muslim religious articles. (*Id.*) Also, Plaintiff urges that the October 25, 2010 addendum, stating that religious item orders from Union Supply would not count as quarterly packages is discriminatory. (*Id.* at 9–10.) Davis complains that the October 2010 approved-vendor policy penalizes him for ordering oil from his Muslim vendor, a reliable supplier of noncontaminated religious items. (*Id.* at 10.)

As discussed in connection with Plaintiff's unauthorized retaliation and conspiracy claims, the Court will consider whether Davis would have been granted leave to amend if he properly sought to add a new equal protection cause of action. *See Johnson,* 356 F.3d at 1077 (listing factors relevant to granting leave to amend); *Taylor,* 2010 WL 5641065, at *6–7, 2010 U.S. Dist. LEXIS 140060, at *19.

The Court has already concluded that including a new claim in the Second Amended Complaint without authorization is evidence of bad faith, and adding an alternate theory of liability will not substantially prejudice the Defendants. Still, an amendment to include the Fourteenth Amendment claims may be futile.

The Supreme Court has stated that "whenever the government treats any person unequally because of his or her [membership in a protected class], that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 229–30, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995); *see also Damiano v. Florida Parole & Probation Comm'n,* 785 F.2d 929, 932–33 (11th Cir.1986) (explaining that protected classes include race, religion, national origin, and poverty). "The Constitution's equal protection guarantee ensures that prison officials cannot

discriminate against particular religions." *Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir.1997), *abrogated* in *part* on *other grounds by Shakur v. Schriro,* 514 F.3d 878, 884–85 (9th Cir.2008). The Fourteenth Amendment is not violated by unintentional conduct that may have a disparate impact. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). "[A] plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998).

 "Prisoners enjoy religious freedom and equal protection of the law subject to restrictions and limitations necessitated by legitimate penological interests." *Freeman v. Arpaio,* 125 F.3d at 737. Prison officials "must afford a prisoner of a minority religion 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (quoting *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)); *see Shakur,* 514 F.3d at 891. Prisons need not provide identical treatment to different faiths, but they must make a "'good faith accommodation of the [prisoners'] rights in light of practical considerations.'" *Id.* (alteration in original) (quoting *Allen v. Toombs,* 827 F.2d 563, 569 (9th Cir.1987)). Courts apply strict scrutiny "when distinctions are made on the basis of a suspect class, like religion." *Ass'n of Christian Schs. Int'l v. Stearns,* 362 Fed.Appx. 640, 646 (9th Cir.2010). If the policy is "facially neutral," disproportionate impact on a protected class can "satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Lee v. City of Los Angeles,* 250 F.3d 668,

686 (9th Cir.2001) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. at 264–66, 97 S.Ct. 555).

In his Motion to Dismiss, Defendant Small argues that Davis does not plead that the discrimination is based on his membership in a protected class because he does not allege that other inmates had access to religious items that he did not. (Mot. Dismiss Attach. # 1 Mem. P. & A. 13, ECF No. 30.) "The memorandum does not refer to the Muslim religion, nor does it exclude any other religions from its application." (*Id.* at 13–14.) In fact, Small contends, the addendum requires all religious orders to be counted as quarterly packages and has universal application. (*Id.* at 13 14.) The addendum furthers the legitimate government interest in controlling prisoner property to limit contraband. (*Id.* at 14.)

Davis counters by stating that chaplain approval is not required if he uses Union Supply for religious specialty orders, but it is required for nonapproved vendors. (Opp'n 8, ECF No. 31.) Plaintiff argues that ninety-five percent of prisoners at Calipatria are not Muslim, and the addendum only mentions Muslim religious items. (*Id.* at 8–9.) Plaintiff asserts he is being singled out because of his religion, and although section 3190(i)(4) of the California Code of Regulations allows inmates to have special order purchases from locally approved vendors, Davis contends that this package is different from the personal property package based upon the inmate's privilege group status, referred to in section 3190(e). (*Id.* at 7, 9 (citing Cal. Code. Regs. tit. 15, § 3190 (2012)).)

Defendant Small argues in his Reply that Davis appears to complain that he could not order from the vendor of his choice once the October 25, 2010 addendum was issued. (*See* Reply 6, ECF No. 33.) Small asserts that choosing between

vendors does not amount to discrimination. (*Id.*) Also, the restriction serves a legitimate penological interest because approving vendors in advance reduces administrative costs, speeds up mail delivery to inmates, and reduces the possibility of contraband. (*Id.*)

### a. The September 16, 2009 addendum

To state an equal protection claim, Davis must allege that the Defendants acted with the intent to discriminate against him based on his membership in a protected class. *Barren*, 152 F.3d at 1194. Because he asserts discrimination based on religion, which is a protected class, the strict scrutiny standard is applied. *Ass'n of Christian Schs. Int'l*, 362 Fed.Appx. at 646. If the policy is facially neutral, Plaintiff must allege facts demonstrating that Small acted with a discriminatory purpose when enacting the policy, resulting in a disproportionate impact. *See Lee*, 250 F.3d at 686.

The September 2009 policy provides, in relevant part:

> The following course of action will be implemented in Receiving and Release in regards to religious packages:
>
> . . . .
>
> 2. Special orders for the following items: prayer oil, [a] prayer rug, spiritual items, beads, etc., will be considered a quarterly package. The arrival date of the special order shall be the basis for the eligibility determination.

(Second Am. Compl. Attach. # 2 Ex. U, at 39, ECF No. 29.) Warden Small signed the addendum. (*Id.*)

Although Davis's claim is that the policy targets only Muslim religious purchases, the addendum does not list any religion and is facially neutral. *Lee*, 250 F.3d at 686. Plaintiff has asserted a discriminatory impact on the protected class of Muslim practitioners because he and other Muslim inmates must count their orders as quarterly packages and choose between religious articles and other items. (Second Am. Compl. 9–10, ECF No. 29.)

" 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Navarro v. Block*, 72 F.3d 712, 716 n. 5 (9th Cir.1995) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). Some of the "other evidence" that can establish discriminatory intent includes the "historical background of the decision ... particularly if it demonstrates there has been a series of official actions taken for invidious purposes ...." *Id.* at 716 (citation omitted) (internal quotation marks omitted). The mere fact that a facially neutral policy has a "foreseeably disproportionate impact" on a protected group, without more, does not rise to the level of an equal protection violation. *Lee*, 250 F.3d at 687.

Taken as a whole, Davis has alleged that the policy was implemented by Warden Small, at least in part, "because of" its adverse effects on Plaintiff and other Muslim inmates, as the articles listed are items ordered by only Muslim prisoners. *See Navarro*, 72 F.3d at 716. Davis submits that only five percent of Calipatria inmates are Muslim, so limiting the policy to Muslim-specific items demonstrates inherent animus toward him and other Muslims. (*See* Second Am. Compl. 9–10, ECF No. 29; Opp'n 8–9, ECF No. 31.); *see also Freeman*, 125 F.3d at 737–38 ("Such conduct ... was not directed at inmates of other faiths. We find this sufficient to raise a genuine issue as to whether Muslim inmates' access to Islamic services is rea-

sonable in comparison to the access of other inmates to their religious services.").

The strict scrutiny standard applies to Davis's claim "because religion is a suspect class." *See Ass'n of Christian Schs. Int'l,* 362 Fed.Appx. at 646 (rejecting an equal protection challenge to University of California course approval policy that was not based on a suspect classification); *see, e.g., Johnson v. California,* 543 U.S. 499, 505, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005) (stating that racial classifications must be narrowly tailored to further compelling governmental interests). Plaintiff's claim is that the discriminatory addendum was issued for the sole purpose of discriminating against Davis and other Muslims. (*See* Second Am. Compl. 9, ECF No. 29.) Without substantiation, Defendants assert that the policy was implemented for the administrative convenience of saving costs, streamlining searches, and controlling inmate property. (*See* Mot. Dismiss Attach. # 1 Mem. P. & A. 6, ECF No. 30.) *But see Frontiero v. Richardson,* 411 U.S. 677, 690–91, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (" '[A]dministrative convenience' is not a shibboleth, the mere recitation of which dictates constitutionality."); *see also Johnson,* 543 U.S. at 507–08, 125 S.Ct. 1141 (finding the policy to house inmates of the same race together to avoid racially motivated violence was not narrowly tailored to a compelling interest in prison safety, even though race riots had occurred). Moreover, the asserted goals are undermined by the fact that the September 16, 2009 policy is alleged to restrict only Muslim purchases to quarterly packages, but it does not impose similar restrictions on articles purchased by worshipers of other religions.

■■■ At this pleading stage, Davis has alleged facts sufficient to establish that the policy adopted by Small was enacted with discriminatory intent and fails the strict scrutiny standard. Warden Small's Motion to Dismiss the equal protection claim premised on the September 16, 2009 addendum should be **DENIED.** Although Defendants Powell, Borem, and Ours did not join in Small's Motion, Davis does not present any facts indicating that they were involved in the imposition of this policy. Without more, an amendment to include an equal protection claim against Defendants Powell, Borem, and Ours regarding the September 16, 2009 addendum would be futile, and the claim against them should not be treated as properly asserted.

### b. October 25, 2010 addendum

Davis also challenges the policy stating that orders from approved vendors would not count as a quarterly package, but orders from nonapproved vendors would. (*See* Second Am. Compl. 10, ECF No. 29.) Still, its provisions are facially neutral, and Davis does not contend otherwise. *See Lee,* 250 F.3d at 686. Plaintiff appears to claim is that the facially neutral policy had a discriminatory impact, yet there are no allegations showing that this addendum restricted Davis and other Muslim inmates more than it restricted prisoners of other faiths.

Plaintiff has not pleaded that Defendants acted with discriminatory intent. *Barren,* 152 F.3d at 1194. Unlike the September 2009 policy essentially requiring Davis and other Muslim inmates to choose between religious items and other purchases, the October 2010 addendum does not preclude the purchase of Muslim items, as long as inmates order from vendors approved by the prison. *See Lee,* 250 F.3d at 686. Davis can also order religious items from his preferred, nonapproved vendor with chaplain approval, and the order will count as a quarterly package. (*See* Opp'n 8, ECF No. 31.)

Thus, an amendment to include an equal protection claim against all four Defen-

dants would be futile. *Johnson,* 356 F.3d at 1077. The district court should treat the equal cause of action in count two based on the October 25, 2010 policy as improperly alleged.

## C. *Conclusory Allegations Against Defendants Powell, Borem, and Ours in Count Two*

In count two, Davis asserts claims for conspiracy, retaliation, and discrimination against these three Defendants. (Second Am. Compl. 9–10, ECF No. 29.) He concludes by arguing that they also violated the First Amendment and RLUIPA. (*Id.* at 10.) Defendants Powell, Borem, and Ours maintain that these claims fail because there are no specific allegations against them, and the charges are conclusory and formulaic. (Mot. Dismiss Attach. # 1 Mem. P. & A. 14, ECF No. 30.)

 To be liable under § 1983, a person acting under color of state law must cause the plaintiff to suffer the violation of a constitutional right. 42 U.S.C.A. § 1983. "A person 'subjects' another to the deprivation of a constitutional right ... if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978) (citing *Sims v. Adams,* 537 F.2d 829 (5th Cir.1976)). Thus, the plaintiff must allege that each defendant committed some act, or failed to act in a particular way, that was the cause of the constitutional injury. *Williams v. Bennett,* 689 F.2d 1370, 1385 (11th Cir.1982). A plaintiff must link each defendant to the alleged § 1983 violation, and the factual allegations must be sufficient to give the defendants fair notice of the claim against them. *Whiting v. Cnty. of Riverside,* No. 11–1603–CAS(CW), 2012 WL 761231, at *6, 2012 U.S. Dist. LEXIS 30613, at *17 (C.D.Cal. Mar. 6, 2012) (cit-

ing *Ortez v. Washington Cnty.,* 88 F.3d 804, 809–10 (9th Cir.1996)).

Plaintiff does not make any specific allegations against Powell, Borem, or Ours in count two, other than a general assertion that they "conspired to force Plaintiff to purchase prayer oils from the[ir] vendor," and they retaliated and discriminated against him. (Second Am. Compl. 9, ECF No. 29.) As discussed above, Davis fails to state a conspiracy claim against these three Defendants, and their Motion to Dismiss should be granted. The retaliation and equal protection claims against Powell, Borem, and Ours were improperly included. Plaintiff does not attribute any other unconstitutional behavior to these Defendants. (*See id.* at 9–10.) Therefore, Defendants Borem, Ours, and Powell's Motion to Dismiss the First Amendment and RLUIPA claims against them in count two of the Second Amended Complaint should be **GRANTED.** Because Davis could not plead any additional facts to cure the deficiencies in his pleadings and has already been given leave to amend, he should not be given further leave to amend his claims against Defendants Powell, Borem, and Ours in count two. *Lopez,* 203 F.3d at 1127.

## D. *First Amendment*

 The Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, "forbids all laws 'prohibiting the free exercise' of religion." *McDaniel v. Paty,* 435 U.S. 618, 620, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (citing U.S. Const. amend. I). The clause protects a person's right to hold a particular religious belief and the right to engage in conduct motivated by that belief. *Emp't Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). "[T]he 'exercise of religion' often involves not only belief and

profession [of belief] but the performance of (or abstention from) physical acts ...."). *Id.*

■■■■ "The right to exercise religious practices and beliefs does not terminate at the prison door." *McElyea,* 833 F.2d at 197 (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). To be entitled to protection under the Free Exercise Clause of the First Amendment, the claim must involve a sincerely held religious belief. *Malik v. Brown,* 16 F.3d 330, 333 (9th Cir.1994) (citations omitted). In order to establish a free exercise violation, a prisoner must show that the defendants burdened the practice of his sincerely-held religious beliefs. *Shakur v. Schriro,* 514 F.3d at 884–85.

■■■ A prisoner's First Amendment right to freely exercise his religious beliefs, however, is "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea,* 833 F.2d at 197 (citing *O'Lone,* 482 U.S. at 342, 107 S.Ct. 2400). The competing interests are balanced by determining whether the restriction is "reasonably related to legitimate penological interests." *O'Lone,* 482 U.S. at 353, 107 S.Ct. 2400; *see also Anderson v. Angelone,* 123 F.3d 1197, 1198 (9th Cir.1997). The regulation cannot be an "exaggerated response to prison concerns." *Turner v. Safley,* 482 U.S. 78, 80, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

In *Turner,* the Court announced the standard for determining the reasonableness of a prison regulation that infringes on prisoners' constitutional rights. More recently, the Court clarified the *Turner* standard:

> [F]our factors are relevant in deciding whether a prison regulation affecting a constitutional right ... withstands constitutional challenge: [1] whether the regulation has a " 'valid, rational connection' " to a legitimate governmental interest; [2] whether alternative means are open to inmates to exercise the asserted right; [3] what impact an accommodation of the right would have on guards and inmates and prison resources; and [4] whether there are "ready alternatives" to the regulation.

*Overton v. Bazzetta,* 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (citing *Turner,* 482 U.S. at 89–91, 107 S.Ct. 2254). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.*

■■■ Legitimate penological interests include "security, order, and rehabilitation." *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *see also Florence v. Bd. of Chosen Freeholders,* 566 U.S. ——, ——, 132 S.Ct. 1510, 1527, 182 L.Ed.2d 566 (2012) (Breyer, J., dissenting) (noting that strip searches are reasonably related to finding injuries, preventing spread of disease, minimizing gang violence, and detecting contraband, which are legitimate penological interests); *Bell v. Wolfish,* 441 U.S. at 546–47, 99 S.Ct. 1861 (finding that the protection of inmates and staff is a legitimate penological interest). "Maintaining safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions for the problems they face." *Florence,* 566 U.S. at ——, 132 S.Ct. at 1515; *see also Shaw v. Murphy,* 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001) (holding that courts generally defer to prison official's judgment because problems in prisons are complex and courts are not equipped to manage prisons). Although *Turner* dealt with the reasonableness of prison regula-

tions, the same analysis has been applied to individual acts preventing a prisoner from engaging in a religious practice. *See Ford v. McGinnis,* 352 F.3d 582, 594–95 (2d Cir.2003). The *Turner* standard applies to Davis's Second Amended Complaint.

### 1. Count one: temporary total ban on Islamic prayer oil

In their Motion to Dismiss, Small, Powell, Borem, and Ours contend that prayer oil was temporarily banned while officials investigated whether it was flammable and attempted to control prisoner inventory. (Mot. Dismiss Attach. # 1 Mem. P. & A. 5, ECF No. 30.) Plaintiff counters that although Defendants based their decision on the material safety data sheets ("MSDS"), the MSDS provided by Halalco Books would have shown that the prayer oil was not flammable. (Opp'n 2, ECF No. 31.) In their Reply, Defendants assert that Davis includes a memorandum written by Defendant Ours more than six years before the confiscation of Davis's prayer oil. (Reply 3, ECF No. 33 (citing Second Am. Compl. Attach. # 2 Ex. I, ECF No. 29).) Also, the material safety data sheet from Halalco that Plaintiff attaches is undated. (*Id.* (citing Second Am. Compl. Attach. # 2 Ex. J, ECF No. 29).) Defendants further argue that Plaintiff did not plead that Ours reviewed or relied on the Halalco document when making the decision to ban the prayer oil from Calipatria. (*Id.*)

In the Second Amended Complaint, Davis maintains that the Defendants violated his First Amendment rights when they banned prayer oil from Calipatria without any penological justification. (*See* Second Am. Compl. 3–8, ECF No. 29.) Plaintiff asserts that in the Islamic religion, the use of prayer oil is obligatory. (*Id.* at 3 (citing *id.* Attach. # 1 Ex. A).) On August 11, 2009, Defendant Powell authorized Davis to purchase eight ounces of prayer oil per quarter; Plaintiff began purchasing prayer oil from Halalco Books, a Calipatria-approved vendor. (*Id.* at 4.) On October 9, 2009, Halalco sent Davis's prayer oil order to him at Calipatria, but he never received it. (*Id.*) Plaintiff argues that Defendant Ours's decision to ban prayer oil was not supported by evidence, and Ours never provided an explanation for implementing the ban. (*Id.* at 4–5.)

Then on February 3, 2010, Defendant Borem sent Plaintiff a letter stating that his prayer oil had been returned to Halalco and that Defendants Ours, Small, and Powell had concluded that prayer oil would no longer be allowed at Calipatria because it posed a fire, health, and safety threat. (*Id.* at 5.) Borem did not indicate which data sheet was used to determine flammability. (*Id.*) According to Plaintiff, there was a "total ban" of prayer oil from August 11, 2009, to October 16, 2010.(*Id.*) Defendant Ours, on November 14, 2003, had sent a memorandum to department heads containing an explanation of how to determine whether a material is flammable. (*Id.* at 6.) Davis asserts that based on this explanation, Defendants Ours, Small, and Powell knew the Halalco prayer oil was within the hazardous materials guidelines for Calipatria. (*Id.*)

Also, Associate Warden Anderson's July 12, 2010 letter stated that the new Calipatria warden and staff found there was no compelling reason to ban prayer oil. (*Id.* at 6–7.) Davis was not given an alternative prayer oil vendor until August 1, 2010, when Defendants provided the Union Supply catalog. (*Id.* at 7.) Defendant Borem allegedly knew that Davis's October 9, 2009 order from Halalco Books contained religious items, but Borem still returned the prayer oil to Halalco on February 3, 2010. (*Id.* at 7–8.) Plaintiff argues that he again received authorization to order prayer oil, but Borem failed to deliver Davis's July 17 and 18, 2010 prayer oil

orders until October 16, 2010. (*Id.*) Borem continued to return prayer oil to Halalco on the ground that it was not an approved vendor, even though it had been approved as early as July 12, 2010.(*Id.*) As a result, Plaintiff complains, the Defendants violated his First Amendment rights. (*Id.*)

### a. Rationally related to a legitimate interest

Defendants contend that the first *Turner* factor weighs in their favor because there is a rational connection between the temporary ban and the penological interest of preventing inmate possession of flammable material. (Mot. Dismiss Attach. # 1 Mem. P. & A. 5–6, ECF No. 30.) Defendants claim the exhibits attached to the Second Amended Complaint show the prayer oil was, in fact, flammable. (*Id.* at 6 (citing Second Am. Compl. Attach. # 2 Ex. H, ECF No. 29).) Even if the oil was not flammable, prison officials were entitled to determine whether it was because they have an interest in regulating prisoner purchases and property. (*Id.*) Controlling prisoner property reduces administrative costs and streamlines the process of searching cells as well as monitoring inmate property. (*Id.*)

Davis argues that Defendants' actions were speculative and based on an exaggerated claim that the oil was flammable; Defendants therefore had no legitimate penological justification to ban the oil while they determined whether it was flammable. (Opp'n 2–3, ECF No. 31.) Davis insists that the MSDS and shipping MSDS information from Halalco Books showed the prayer oil was not flammable. (*See id.* at 6 (citing Second Am. Compl. Exs. I, J).) Plaintiff points out that *Lewis v. Ollison*, 571 F.Supp.2d 1162 (C.D.Cal.2008), one case cited by Defendants, only deals with limiting the quantity of prayer oil, not a total ban. Davis identifies one court that found a total ban of prayer oil unconstitutional. (Opp'n 2–3 (citing *Munir v. Scott*,

792 F.Supp. 1472, 1482–83 (E.D.Mich. 1992), *rev'd, Munir v. Scott*, 12 F.3d 213 (6th Cir.1993)).) Plaintiff also distinguishes another case cited by Defendants, *Davis v. Flores*, No. 1:08–cv–1197, 2011 WL 149361, 2011 U.S. Dist. LEXIS 4417 (E.D.Cal. Jan. 14, 2011), *aff'd* in *part and vacated in part*, 484 Fed.Appx. 108 (9th Cir.2012). (Opp'n at 6, ECF No. 31.) In *Davis v. Flores*, the prisoners retained access to prayer oil in the chapel, and the total ban only applied to the Muslim imam bringing prayer oil into the prison. (*Id.*)

The first *Turner* factor looks to whether the prison regulation is rationally related to a legitimate penological interest. *Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (justifications for prison policy set forth in summary judgment motion). The Defendants assert the following three legitimate governmental interests for banning prayer oil: (1) preventing fire hazards in cells, (2) regulating prisoner purchases and property to prevent theft, bartering, gambling, or hiding contraband, and (3) reducing administrative costs, streamlining cell searches, and monitoring inmate property. (Mot. Dismiss Attach. # 1 Mem. P. & A. 6, ECF No. 30.) All three reasons can be legitimate penological interests. *See Ward v. Walsh*, 1 F.3d 873, 879 (9th Cir.1993) (following a bench trial, appellate court upheld restriction of prayer candles in cells because of fire hazard); *Davis v. Flores*, 2011 WL 149361, at *10–11, *12–13, 2011 U.S. Dist. LEXIS 4417, at *31–33, *40 (granting summary judgment and upholding temporary ban on inmates' possession of prayer oil in cells due to imam smuggling contraband into the prison using prayer oil bottles); *Lewis v. Ollison*, 571 F.Supp.2d at 1172 (considering attachment to complaint and stating that regulating prayer oil purchases is related to a legitimate interest in preventing certain conduct, such as theft, bartering, gambling, hiding contraband);

*Verhagen,* 220 F.Supp.2d at 953 (granting summary judgment and finding that reducing costs, streamlining searches, and monitoring inmate property are legitimate interests).

The prison regulation must be rationally related to the legitimate interest. *Beard,* 548 U.S. at 529, 126 S.Ct. 2572. A ban on flammable prayer oil because of fire concerns can be rationally related to prison safety concerns. *See Glass v. Scribner,* No. 1:05–cv–0457–LJO(DLB), 2008 WL 724029, at *6–9, 2008 U.S. Dist. LEXIS 20518, at *17–23 (E.D.Cal. Mar. 17, 2008) (granting summary judgment and finding that a temporary ban on prayer oil after inmates left burning prayer oil unattended in cells was rationally related to the legitimate interest in prison safety). But a ban on nonflammable prayer oil does not further prison safety and is an exaggerated response to speculative concerns. *See Turner,* 482 U.S. at 89, 107 S.Ct. 2254.

Davis has alleged facts sufficient to establish that the prayer oil was not flammable, and the ban was not based on legitimate flammability concerns. (Second Am. Compl. 5–6, ECF No. 29.) He contends that the total ban had no rational connection to prison safety because the oil is nonflammable. *See O'Lone,* 482 U.S. at 350–51, 107 S.Ct. 2400 (1987) (discussing rational connection between prison security and prison policy). *But cf. Hammons v. Saffle,* 348 F.3d 1250, 1254–55 (10th Cir. 2003) (affirming summary judgment that found logical connection between prison regulation that banned inmates' in-cell prayer oil possession and preventing illegal drug use because inmates could still purchase and possess prayer oil in designated, supervised areas).

### b. Alternative means

Defendants assert that the second *Turner* factor also weighs in their favor because Davis had alternative methods of practicing his religion. (Mot. Dismiss Attach. # 1 Mem. P. & A. 6, ECF No. 30.) He was authorized to receive the Holy Qur'an, Miswak (tooth sticks), a religious medallion, a prayer rug, prayer caps, a Kudra shirt, prayer beads, and a Hadith. (*Id.*) Davis could pray in his cell and use these items. (*Id.*) The Plaintiff counters that he did not have any alternative because prayer oil use is required by his religion. (Opp'n 3–4, ECF No. 31.) Davis maintains that "prison officials must give inmates a reasonable opportunity to exercise their religious belief without fear of penalty." (*Id.* at 4.) In their Reply, Defendants posit that the second *Turner* factor does not consider whether Davis had "alternative prayer oils," but whether he had alternatives means of practicing his religion. (Reply 4, ECF No. 33.)

The second *Turner* factor is whether the prisoner had alternative means to exercise his religious right. *Beard,* 548 U.S. at 529, 126 S.Ct. 2572. Davis pleads that he did not have a reasonable alternative to practice his religion because the use of prayer oil is a "central" part of his religious practice; he adds that he had no other means of acquiring prayer oil. (Opp'n 4, ECF No. 31.) *But see Hammons,* 348 F.3d at 1256 (finding the plaintiff's lack of in-cell access to prayer oil did not "eradicate the value of his prayers" because he had the alternative of accessing and using his prayer oil through volunteer chaplains); *O'Lone,* 482 U.S. at 352–53, 107 S.Ct. 2400 (discussing that while prisoners on work detail are unable to attend Jumu'ah services, they can still participate in other Muslim ceremonies and practices). Davis did not have access to prayer oil anywhere within the prison, and due to the total ban, he contends that he could not conduct a practice central to his religious beliefs. "Alternatives ... need not be ideal, however; they need only be available. Here, the alternatives are of sufficient utility that they give some support to the regulations,

particularly in a context where visitation is limited, not completely withdrawn." *Overton,* 539 U.S. at 135, 123 S.Ct. 2162 (determining that a policy limiting who may visit a prisoner passes the *Turner* test because the inmate may still write or call persons not allowed to visit); *see O'Lone,* 482 U.S. at 352–53, 107 S.Ct. 2400. Plaintiff has alleged he was not provided an alternative to a central tenant of his religion for approximately fourteen months; the second *Turner* factor weighs in Davis's favor.

### c. Impact of accommodation

Defendants contend that accommodating Plaintiff's request for prayer oil would "impact guards, other inmates, and the allocation of prison resources generally." (Mot. Dismiss Attach. # 1 Mem. P. & A. 7, ECF No. 30.) They also argue that even though the prayer oil was ultimately found not to be flammable, prison officials had an interest in verifying the flammability of the oil, reducing administrative costs, and streamlining the search of prisoners cells and property. (*Id.* at 6–7.) Davis argues the Defendants relied on the false assumption that the prayer oil was flammable. (Opp'n 5, ECF No. 31.)

Under the third factor in *Turner,* courts look to the impact that an accommodation would have on the guards, other prisoners, and prison resources. *Beard,* 548 U.S. at 529, 126 S.Ct. 2572. Indeed, allowing inmates to use and possess flammable prayer oil raises safety concerns and would financially impact the prison because each inmate's prayer oil use would have to be monitored. *See Glass,* 2008 WL 724029, at *8, 2008 U.S. Dist. LEXIS 20518, at *22. But as discussed, Plaintiff has sufficiently pleaded that the oil was not flammable and that the Defendants did not have a legitimate basis for believing it was. Defendants' claim that the ban saved administrative costs and streamlined cell searches is insufficient. Calipatria previously allowed prayer oil, and continuing to do so would

not impose a significant administrative burden. Additionally, guards still conduct cell searches, and it is not apparent that possessing prayer oil makes cell searches particularly burdensome. *See Verhagen,* 220 F.Supp.2d at 950–51 (finding that specifically restricting what items an inmate may possess is not the least restrictive means to controlling administrative costs); *Cf. Curry v. Dep't of Corr.,* C–09–3408 EMC(pr), 2012 WL 968079, at *9–10, 2012 U.S. Dist. LEXIS 38464, at *30–31 (N.D.Cal. Mar. 21, 2012) (discussing the burden imposed by allowing inmates to possess prayer oil in their cells while a ban on oil was implemented). Thus, the third *Turner* factor also weighs in Davis's favor.

### d. Ready alternatives

Defendants argue that Davis's claim fails under the fourth *Turner* factor because they ultimately provided an alternative prayer oil vendor, although there was no alternative in the interim. (Mot. Dismiss Attach. # 1 Mem. P. & A. 7, ECF No. 30.) Plaintiff responds that Defendants waited fourteen months before they provided him with an alternative prayer oil vendor on October 16, 2010. (Opp'n 5–6, ECF No. 31.) In their Reply, Defendants maintain that neither the Plaintiff nor Defendants have identified any reasonable alternative to the total ban. (Reply 4, ECF No. 33.)

Under this final factor, courts determine whether there are ready alternatives to the regulation. *Beard,* 548 U.S. at 529, 126 S.Ct. 2572. The Defendants could have restricted inmate access to prayer oil to an area where use could be monitored, such as the prison's chapel. *See Davis v. Flores,* 2011 WL 149361, at *9, *12–13, 2011 U.S. Dist. LEXIS 4417, at *28, *39–40 (finding that the policy banning in-cell prayer oil after Muslim imam used prayer oil bottles to smuggle contraband into the prison passed the *Turner* test because in-

mates could still use oil in the prison chapel). If the Defendants allowed inmates to use the prayer oil during chapel time, the imam could oversee the prisoners' use and could implement procedures to minimize or eliminate the risk of fire. *See Pogue v. Woodford*, CIV S–05–1873 MCE(GGH), 2009 WL 2777768, at *51, 2009 U.S. Dist. LEXIS 75943, at *46 (E.D.Cal. Aug. 25, 2009) (deciding that the ban on in-cell prayer oil use passed the *Turner* test because inmates could keep their oil in the chapel unless they complied with the fire marshall's requirements for in-cell use). This factor also favors Davis.

Based on the above, Davis has sufficiently alleged a First Amendment violation with respect to the temporary, total ban on prayer oil. Defendants' Motion to Dismiss Davis's First Amendment claim in count one should be **DENIED**.

### 2. Count two: restricting religious items to quarterly packages

In count two, Davis claims his First Amendment rights were violated on September 16, 2009, when Defendant Small approved a policy addendum indicating that certain religious items would be counted as quarterly packages. (Second Am. Compl. 9, ECF No. 29.) The items listed in the policy, however, are items used only by Muslim inmates. (*See id.*) Plaintiff contends that the policy was amended again on October 25, 2010, stating that orders from Union Supply, an approved vendor, would not be counted as quarterly packages, but orders from unapproved vendors would. (*Id.* at 10.) As a result, Defendant Small violated Davis's First Amendment rights. (*Id.*)

Defendant Small argues that Plaintiff failed to plead that Small prevented him from practicing his religion, which Davis must allege before the *Turner* factors are applied. (Mot. Dismiss Attach. # 1 Mem. P. & A. 8, ECF No. 30.) The September

16, 2009 policy addendum did not prevent Davis from ordering prayer oil; rather, it merely required him to order the oil as a quarterly package if he chose to order from an unapproved vendor. (*Id.*) Plaintiff only complains that he is unable to order from his vendor of choice, but approving vendors in advance furthers legitimate penological interests, increasing the speed of delivery and reducing the possibility of contraband. (Reply 6, ECF No. 33.) Moreover, encouraging an inmate to order from an approved Muslim vendor instead of another does not impose a substantial burden on his ability to practice Islam. (*Id.* at 6–7.)

Defendant Small also contends that even if the *Turner* factors were applied, the alleged facts demonstrate a rational connection between the policy and the legitimate interest in limiting inmate property to reduce contraband. (Mot. Dismiss Attach. # 1 Mem. P. & A. 8, ECF No. 30.) Further, allowing more inmate packages creates additional work for the guards and requires a greater allocation of prison resources. (*Id.*) Finally, Small contends there is no need for ready alternatives to ordering prayer oil because plaintiff can still order it as part of a quarterly package. (*Id.*)

In his Opposition, Davis argues that the policies did not limit the amount of oil he could order or the frequency; also, Defendants never punished him for theft, gambling, or bartering. (Opp'n 7, ECF No. 31.)

Davis must initially allege a sincere belief that his ability to practice his religion was burdened by the Defendant's regulation of his purchase of prayer oil. *See Shakur*, 514 F.3d at 884–85. Davis was able to practice his religion because he was not denied all access to prayer oil and could still order oil in quarterly packages. *See Sareini v. Burnett*, 08–13961–BC, 2011

WL 1303399, at *3–4, 2011 U.S. Dist. LEXIS 34525, at *11–13 (E.D.Mich. Mar. 31, 2011) (approving policy that restricted certain religious items because the policy merely made it more difficult to practice plaintiff's religion but did not impose a substantial burden). Plaintiff has alleged the policy makes it more difficult to decide when, and from whom, to order prayer oil; yet, increased difficulty may be insufficient to show a substantial burden. *See id.* Davis does not present facts showing that the policy implemented by Small prevented him from engaging in a practice fundamental to his faith.

Warden Small's Motion to Dismiss Davis's First Amendment claim for restricting religious items to quarterly packages, alleged in count two, should be **GRANTED.** *See Sareini,* 2011 WL 1303399, at *4, 2011 U.S. Dist. LEXIS 34525, at *12. Because additional facts could not cure the deficiencies described, Davis should not be given further leave to amend. *See James,* 221 F.3d at 1077.

## E. *RLUIPA*

RLUIPA provides a statutory basis for "protect[ing] prisoners and other institutionalized people from government infringement on their practice of religion." *Mayweathers v. Newland,* 314 F.3d 1062, 1065 (9th Cir.2002). The Act states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc–1(a) (West 2003).

A plaintiff asserting a RLUIPA violation has the initial burden of alleging a prima facie claim that the challenged state action constitutes a "substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford,* 418 F.3d 989, 994 (9th Cir.2005). If the plaintiff meets this burden, the state must prove that "any substantial burden ... is *both* 'in furtherance of a compelling governmental interest' and the 'least restrictive means of furthering that compelling governmental interest.' " *Id.* (emphasis added) (quoting 42 U.S.C.A. § 2000cc–1(a); § 2000cc–2(b)); *see Shakur,* 514 F.3d at 888–89.

Although RLUIPA does not articulate what constitutes a "substantial burden" on religious exercise, the Ninth Circuit has defined the term according to its plain language. *San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024, 1034 (9th Cir.2004). Specifically, state action imposes a "substantial burden" on religion when the regulation or policy " 'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Warsoldier,* 418 F.3d at 995 (alteration in original) (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.,* 450 U.S. 707, 717–18, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)). Recently, the Ninth Circuit stated "that a 'substantial burden is imposed ... when individuals are ... coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions.' " *Perkel v. U.S. Dep't of Justice,* 365 Fed. Appx. 755, 756 (9th Cir.2010) (citing *Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058 (9th Cir.2008)). The statute defines

"religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc–5(7)(A); *see Shakur*, 514 F.3d at 888.

RLUIPA is construed broadly and in favor of the prisoner's right to exercise his religious beliefs. 42 U.S.C.A. § 2000cc–3(g); *Warsoldier*, 418 F.3d at 995. Nonetheless, "[a] prison's 'accommodation of religious observances' should not be elevated 'over an institution's need to maintain order and safety.'" *Rouse v. Van Boening*, No. C09–5655 RBL/KLS, 2010 WL 5583040, at \*5, 2010 U.S. Dist. LEXIS 139734, at \*14 (W.D.Wash. Dec. 27, 2010) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 722, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005)). Prison security constitutes a compelling state interest, and courts must give deference to prison officials' expertise in this area. *Cutter*, 544 U.S. at 725 n. 13, 125 S.Ct. 2113. Courts should not, however, automatically rubber stamp a prison official's judgment. *Lovelace v. Lee*, 472 F.3d 174, 190 (4th Cir.2006).

■■■ "[P]rison officials bear the burden of establishing that the restriction challenged is the 'least restrictive alternative to achieve' a compelling governmental interest." *Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir.2008) (quoting *Warsoldier*, 418 F.3d at 998). "If prison officials meet th[is] standard, the prison regulation passes muster under RLUIPA, regardless of the burden it imposes on religious exercise." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir.2008). Officials cannot justify restrictions by merely claiming the regulation is necessary to maintain order and security. *Id.* at 989–90. The Ninth Circuit has also held, "[A]n outright ban on a particular religious exercise is a substantial burden on that exercise." *Id.* at 988.

### 1. Count one: temporary ban on prayer oil

#### a. Substantial burden

■■■ To state a claim under RLUIPA, Plaintiff must sufficiently allege the regulation substantially burdened his religious practice. *Warsoldier*, 418 F.3d at 994. The Defendants do not appear to challenge the allegation that a temporary prayer oil ban imposed a substantial burden on Davis's religious practice. (*See* Mot. Dismiss Attach. #1 Mem. P. & A. 10–11, ECF No. 30.) A prison policy imposes a substantial burden when it "intentionally puts significant pressure on inmates ... to abandon their religious beliefs." *Id.* at 996. For a burden to be substantial, the Ninth Circuit has required it to be "oppressive" to a "significantly great extent," so as to make the religious practice "effectively impracticable." *San Jose Christian Coll.*, 360 F.3d at 1034–35. The religious practice must be important to the religion, and the challenged restriction must impose a substantial burden on the ability to practice the plaintiff's religion. *See Riggins v. Clarke*, 403 Fed.Appx. 292, 295 (9th Cir. 2010). Here, a complete ban on prayer oil—a practice mandated by the Islamic religion—placed a substantial burden on Davis's exercise of his religion. *See Charles*, 220 F.Supp.2d at 948 (finding that a prison's total ban on prayer oil might substantially burden religious exercise). The ban forced Davis to abandon a practice mandated by his religion. *See Greene*, 513 F.3d at 988 (stating that a complete ban on a religious practice is a substantial burden).

#### b. Compelling interest

After Davis has shown a substantial burden, the onus shifts to the Defendants to show the temporary ban on prayer oil was in furtherance of a compelling governmen-

tal interest. *See Warsoldier*, 418 F.3d at 995.

Defendants argue that they temporarily halted shipments of prayer oil to determine whether the oil was flammable and to locate an alternative prayer oil vendor. (Mot. Dismiss Attach. # 1 Mem. P. & A. 10–11, ECF No. 30.) They assert that courts have upheld temporary bans on prayer oil and restrictions on the amount of prayer oil an inmate may possess. (*Id.*) The ban furthers a compelling government interest and is the least restrictive means of furthering the interest; once the prayer oil was found not to be flammable, Defendants located an alternate vendor and lifted the ban. (*Id.* at 11.) In his Opposition, Davis contends Defendants knew the prayer oil was not flammable and notes that they still have not provided an MSDS showing the oil was flammable. (Opp'n 1, ECF No. 31.)

Prison safety and security are compelling governmental interests. *Cutter*, 544 U.S. at 725 n. 13, 125 S.Ct. 2113; *Johnson v. California*, 543 U.S. at 514, 125 S.Ct. 1141; *see also Ward*, 1 F.3d at 879 (upholding a ban on prayer candles in inmate cells due to fire concerns under *Turner*). A ban on potentially flammable materials furthers the compelling state interest of maintaining safety and security within prisons because cell fires threaten inmates and staff. *See Klem*, 497 F.3d at 283–84. Nevertheless, the total ban on prayer oil must have been in furtherance of the compelling interest of prison safety. *See Warsoldier*, 418 F.3d at 994. It is unclear whether the Defendants had any legitimate basis for believing the oil was flammable, and even a temporary ban on nonflammable prayer oil does not further the compelling interest in prison safety. *See Washington v. Klem*, 497 F.3d 272, 284 (9th Cir.2007) (finding that a policy limiting the number of books inmates may possess in their cells does not further the compelling interest of prison safety because a decrease in books does not reduce the risk of in-cell fires). At a minimum, Davis sufficiently pleaded that Defendants had no legitimate basis for believing that the oil was flammable and banning the oil; therefore, the ban was not in furtherance of a compelling interest.

**c. Least restrictive means**

Even if banning all oil furthered a compelling interest, the policy must also have been the least restrictive means of achieving the governmental interest. *See Warsoldier*, 418 F.3d at 999. Defendants must have "actually considered" alternatives and rejected them before instituting the prayer oil ban. *See id.* Here, Defendants do not allege that they considered alternatives or explain why alternatives were not feasible or an equally efficient means of maintaining prison safety or any other governmental interest. (*See* Mot. Dismiss Attach. # 1 Mem. P. & A. 7–9, ECF No. 30; Reply 6–7, ECF No. 33.) Defendants make a blanket assertion that the total ban was the least restrictive means of achieving safety, but this alone is insufficient. *Greene*, 513 F.3d at 990.

Defendants could have restricted where inmates had access to prayer oil or instituted requirements that must be met before inmates may possess prayer oil in their cell. *See Pogue*, 2009 WL 2777768, at *15, 2009 U.S. Dist. LEXIS 75943, at *46 (approving policy banning prayer oil because inmates could still have oil in their cell if they complied with fire marshall's requirements, and they could access prayer oil at chapel); *Glass*, 2008 WL 724029, at *7–9, 2008 U.S. Dist. LEXIS 20518, at *20–23 (finding that the in-cell prayer oil restriction was not unconstitutional because inmates could still use the oil at chapel). The Defendants have not stated that it would be impracticable to allow inmates to use prayer oil during chapel

and under the supervision of the Muslim imam. *See Davis v. Flores*, 2011 WL 149361, at *14–15, 2011 U.S. Dist. LEXIS 4417, at *46–47. Davis has alleged facts indicating that Defendants made no attempt to consider less extreme measures of furthering prison safety before instituting the total ban on prayer oil. "There is no basis in this case for a court ... to declare the least restrictive means test satisfied without any substantive explanation from prison officials." *See Lovelace*, 472 F.3d at 192 (footnote omitted). The Defendants Motion to Dismiss Davis's RLUIPA claim against them in count one should be **DENIED**.

### 2. Count two: restricting religious items to quarterly packages

Davis additionally asserts that Warden Small's addendum requiring that certain religious orders and orders from nonapproved vendors be counted as quarterly packages, but orders from Union Supply would not be counted as quarterly packages, violates RLUIPA. (Second Am. Compl. 9–10, ECF No. 29.)

Davis must assert that the policy substantially burdened his religious practices. *See Warsoldier*, 418 F.3d at 994. Plaintiff has not pleaded facts establishing a substantial burden because he still had access to prayer oil by ordering it as part of a quarterly package. *See Thomas v. Little*, 2009 WL 1938973, at *5 n. 5, 2009 U.S. Dist. LEXIS 57568, at *15 n. 5 (finding no substantial burden because inmates could still order prayer oil, even if restricted to one vendor). As discussed above, Davis has only alleged that the policies make it more difficult for him to order prayer oil from his preferred vendor; this is not the equivalent of a substantial burden. *See Sareini v. Burnett*, 2011 WL 1303399, at *3–4, 2011 U.S. Dist. LEXIS 34525, at *12. An inmate does not suffer a substantial burden just because the prison fails to "fully provide all the benefits than an in-

mate desires for religious accommodation ...." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, No. 1:10–cv–00045–LJO–SMS, 2010 WL 1729757, at *16, 2010 U.S. Dist. LEXIS 41522, at *45 (E.D.Cal. Apr. 28, 2010) (citing *Sefeldeen v. Alameida*, 238 Fed.Appx. 204, 206 (9th Cir.2007)). For example, "[p]risoners do not have a constitutional right to the religious advisor of their choice." *Id.* at *16, 2010 U.S. Dist. LEXIS 41522 at *46 (citing *Blair–Bey v. Nix*, 963 F.2d 162, 163–64 (8th Cir.1992)). Similarly, Davis does not have a constitutional right to a vendor of his choice. A "satisfactory accommodation" is the touchstone. *Id.* at *16, 2010 U.S. Dist. LEXIS 41522 at *45.

For these reasons, Defendant Small's Motion to Dismiss Plaintiff's RLUIPA claims against him in count two should be **GRANTED** without leave to amend.

### F. *Qualified Immunity*

All of the Defendants argue they are entitled to qualified immunity from liability on the First and Fourteenth Amendment claims because they did not violate clearly established constitutional law, and they reasonably believed their conduct was lawful. (Mot. Dismiss Attach. # 1 Mem. P. & A. 15–16, ECF No. 30; Reply 7, ECF No. 33.) They also assert that courts have approved temporary bans on prayer oil when faced with security concerns and that prison officials are not required to provide prisoners with a special order for religious items. (*Id.* at 16.) Defendant Ours posits that Plaintiff has not cited any case law holding that prison officials cannot institute a temporary ban on prayer oil to determine flammability. (Reply 7, ECF No. 33.) Defendants Small, Borem, and Powell contend that they relied on the hazardous materials specialist's determination that prayer oil was flammable, so their conduct was reasonable. (*Id.*) Finally,

Small asserts there is no federal law holding that inmates are entitled to order religious supplies in a manner different from ordinary supplies. (*Id.*) Thus, Small alleges, he is also entitled to qualified immunity from liability on the First and Fourteenth Amendment claims against him in count two. (*Id.*)

 "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al–Kidd,* 563 U.S. ——, ——, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Hydrick v. Hunter,* 449 F.3d 978, 992 (9th Cir.2006). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

 When considering a claim for qualified immunity, courts engage in a two-part inquiry: Do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct? *Delia v. City of Rialto,* 621 F.3d 1069, 1074 (9th Cir.2010) (quoting *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). A right is clearly established if the contours of the right are so clear that a reasonable official would understand his conduct was unlawful in the situation he confronted. *Dunn v. Castro,* 621 F.3d 1196, 1199–1200 (9th Cir.2010) (citation omitted) (internal quotation marks omitted). This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit. *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citation omitted).

"This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." *Id.*

The Supreme Court recently found that the sequence of this two-step inquiry is no longer "an inflexible requirement." *Pearson,* 555 U.S. at 236, 129 S.Ct. 808. Thus, it is within the court's discretion to decide which step to address first. *Id.; See Delia,* 621 F.3d at 1075; *Bull v. City & County of San Francisco,* 595 F.3d 964, 971 (9th Cir.2010). If the Defendants' conduct does not amount to a constitutional violation, or the violation was not clearly established, or the Defendants' actions reflect a reasonable mistake as to what the law requires, they are entitled to qualified immunity. *Blankenhorn v. City of Orange,* 485 F.3d 463, 471 (9th Cir.2007); *see James v. Rowlands,* 606 F.3d 646, 651 (9th Cir.2010) (quoting *Pearson,* 555 U.S. at 232, 235, 129 S.Ct. 808).

### 1. First Amendment

As previously discussed, the First Amendment claims against all the Defendants in count two should be dismissed. The qualified immunity inquiry may end here. *Pearson,* 555 U.S. at 236, 129 S.Ct. 808 ("In some cases, a discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all."); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *Dunn v. Castro,* 621 F.3d at 1199 (stating that courts can grant qualified immunity on the basis of the clearly established prong alone) (citing *Rowlands,* 606 F.3d at 651). Thus, the Defendants' Motion to Dismiss Plaintiff's

claim for civil damages against them in count two should be **GRANTED** because they are entitled to qualified immunity.

As to Davis's First Amendment claims in count one, however, dismissal is not appropriate. Therefore, the Court will consider whether Defendants are entitled to qualified immunity.

### a. Violation of a constitutional right

In count one, Davis argues that Defendants Powell, Borem, Ours, and Small violated his First Amendment right to practice his religion by enforcing a temporary ban on Islamic prayer oil. (*See* Second Am. Compl. 3–8, ECF No. 29). As outlined above, Davis has sufficiently pleaded that the Defendants' conduct violated his First Amendment right to freely exercise his religion.

### b. Whether the right was clearly established

■■■■ "Whether a right is clearly establishes turns on the 'objective legal reasonableness of the action, addressed in light of the legal rules that were clearly established at the time it was taken.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir.2010) (quoting *Pearson*, 555 U.S. at 242–43, 129 S.Ct. 808). "This is 'a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?'" *Estate of Ford*, 301 F.3d at 1050 (quoting *Jeffers*, 267 F.3d at 910); *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir.1995).

■■■ First, the law governing the Defendants' conduct was clearly established. "Whether the right is clearly established in a particular case is judged as of the date of the incident alleged, and is a pure question of law." *Phillips v. Hust*, 338 F.Supp.2d 1148, 1162 (D.Or.2003) (citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993)). "[T]he right alleged to

have been violated must not be so broadly defined as to 'convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir.2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "On the other hand, ... the right can not be so narrowly construed so as to 'define away all potential claims.'" *Id.* (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)).

■■■ Here, Davis's right to practice his religion, including manners of worship mandated by his faith, was clearly established. *See McElyea*, 833 F.2d at 197 (citing *O'Lone*, 482 U.S. 342, 107 S.Ct. 2400; *Bell v. Wolfish*, 441 U.S. at 545, 99 S.Ct. 1861). In 1997, the Ninth Circuit made clear that prison officials can only restrict inmate's religious practices required by their faith if their justification is reasonably related to legitimate penological interests. *Id.* The Supreme Court articulated that the four-prong *Turner* analysis is used to balance inmate's rights and determine what is reasonably related. *See O'Lone*, 482 U.S. at 350–53, 107 S.Ct. 2400.

■■■ Second, a reasonable prison official in the Defendants' positions would believe that his or her conduct was unlawful. *See Padilla v. Yoo*, 678 F.3d 748, 761–62 (9th Cir.2012). "The relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. If the law did not put the officer on notice that his conduct would be clearly unlawful, qualified immunity is appropriate. *Id.*

Qualified immunity must be viewed in the context of Davis's claims against each Defendant. *See Nampa Classical Acad. v. Goesling*, 714 F.Supp.2d 1079, 1090 n. 14 (D.Idaho 2010). "Reasonable extrapola-

tions of prior law to circumstances where it would have been apparent to reasonable officers will suffice to determine reasonableness in particular circumstances." *Barnes v. Denney*, No. CIV S–07–1380 GGH P, 2010 WL 1006489, at *20, 2010 U.S. Dist. LEXIS 25251, at *61 (E.D.Cal. Mar. 17, 2010) (citing *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009)). Dismissal, however, is inappropriate unless the Court can determine that qualified immunity applies, based on the complaint itself. *Clinton v. Green*, No. CV 08–4180–DOC(OP), 2012 WL 262392, at *7, 2012 U.S. Dist. LEXIS 10374, at *20 (C.D.Cal. Jan. 19, 2012) (citing *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)), *adopted* by *Clinton v. Green*, No. CV 08–4180–DOC(OP), 2012 WL 261172, 2012 U.S. Dist. LEXIS 10353 (C.D.Cal. Jan. 25, 2012).

 At the motion to dismiss stage, a plaintiff "does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights. Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." *Real v. Walker*, No. 2:09–cv–3273 GEB KJN P, 2012 U.S. Dist. LEXIS 28045, at *52 (E.D.Cal. Mar. 2, 2012) (quoting *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir.2007)), *adopted* by *Real v. Walker*, No. 2:09–cv–3273 GEB KJN P, 2012 U.S. Dist. LEXIS 45650 (E.D.Cal. Mar. 30, 2012).

Here, Warden Small joined in the decision to ban prayer oil from Calipatria because he concurred with Defendant Ours that religious prayer oil was flammable. (*See* Second Am. Compl. Attach. # 2 Ex. H, ECF No. 29.) Defendant Ours, the associate hazardous material specialist, Warden Small, and the prison fire chief agreed that religious prayer oil posed a "fire, health and safety hazard." (*Id.*)

Community Partnership Manager Powell notified "R & R Sergeant" Borem on February 1, 2010, that the decision to ban oil was made. (*Id.*) The February 3, 2012 letter notifying Davis of the policy banning all prayer oil was signed by Defendant Borem. (*Id.*) All of the Defendants participated in the decision to ban the oil, which was "based on the fire rating information obtained from the Material Safety Data Sheet (MSDS)." (*Id.*) Defendants also noted, "The institution [is] in the process of approving a vendor to sell non-flammable religious oils via the institutional canteen." (*Id.*)

A reasonable prison official in each Defendant's position would have known that imposing a total ban of payer oil would violate an inmate's right to exercise his religion unless the ban was rationally related to a legitimate interest. *See Beard*, 548 U.S. at 529, 126 S.Ct. 2572 (discussing the *Turner* factors). A reasonable official would also know that banning prayer oil entirely would not be rationally related to prison safety unless the oil was reasonably believed to pose a fire hazard or be flammable. *See Glass*, 2008 WL 724029, at *6– 7, 2008 U.S. Dist. LEXIS 20518, at *17–18 (holding that a ban on prayer oil was rationally related to prison safety after inmates left burning prayer oil unattended). As discussed previously, Davis has sufficiently pleaded that the defendants had no legitimate basis for believing that the prayer oil was flammable. Further, the Defendants would have received the 2003 memorandum explaining which flash points were acceptable. (*See* Second Am. Compl. Attach. # 2 Ex. I, ECF No. 29.)

Defendants argue that case law allowed temporary bans when faced with security or safety concerns. (Mot. Dismiss Attach. # 1 Mem. P. & A. 16, ECF No. 30 (citing *Davis v. Flores*, 2011 WL 149361, at *12– 13, 2011 U.S. Dist. LEXIS 4417, at *40).) This argument, however, suffers from two

deficiencies. First, *Davis* was decided in 2011, after the Defendants implemented the prayer oil ban in 2010. The relevant inquiry is whether the law was clearly established at the time the prayer oil ban was implemented, not one year later. *See Ashcroft*, 563 U.S. at ——, 131 S.Ct. at 2080. Second, *Davis v. Flores* did not address a total prayer oil ban. Rather, the court upheld a ban on prayer oil in inmate cells because the Muslim imam had been smuggling contraband into the prison using prayer oil bottles. *See Davis*, 2011 WL 149361, at *12–13, 2011 U.S. Dist. LEXIS 4417, at *40. Also, the inmates still had access to prayer oil in the chapel. *Id.* The Defendants therefore have not identified case law allowing prison officials to implement a total ban on nonflammable prayer oil without providing any alternatives.

At this stage in the pleadings, Defendants Small, Ours, Powell, and Borem should not be granted qualified immunity, and their Motion to Dismiss the First Amendment claims in count one on this basis should be **DENIED.**

### 2. Equal Protection

The Defendants also argue that they are entitled to qualified immunity with respect to the equal protection allegations. (Mot. Dismiss Attach. # 1 Mem. P. & A. 15–16, ECF No. 30; Reply 7, ECF No. 33.) As discussed previously, Plaintiff fails to state a equal protection claims against Powell, Borem, and Ours in count two, and these claims should be dismissed. The qualified immunity inquiry may therefore end here. *Pearson*, 555 U.S. at 236, 129 S.Ct. 808; *Saucier v. Katz*, 533 U.S. at 201, 121 S.Ct. 2151; *Dunn v. Castro*, 621 F.3d at 1199. The Defendants' Motion to Dismiss based on their qualified immunity from liability for civil damages should be **GRANTED.** Similarly, the equal protection claim against Defendant Small in count two concerning the October 2010 addendum fails

to state a claim. Therefore, Small's Motion to Dismiss on this ground as to the October addendum should also be **GRANTED.**

As to the equal protection claim against Warden Small in count two for the September 2009 policy, however, Davis has pleaded a violation. Therefore, the Court will analyze whether Small may avail himself of qualified immunity from liability based on the September policy.

#### a. Violation of a constitutional right

Defendant Small purportedly discriminated against Davis and other Muslim inmates when he implemented the discriminatory September 16, 2009 policy addendum that only penalizes inmates who order Muslim religious articles. (*See* Second Am. Compl. 9–10, ECF No. 29.) Inmates retain their right to be free from invidious discrimination based on their religion. *Cruz v. Beto*, 405 U.S. at 321–22, 92 S.Ct. 1079. The policy's limitation on Muslim special orders did not apply to non-Muslim religious items; this disparate impact on a protected class can show that Small acted with discriminatory intent "if some invidious or discriminatory purpose underlies the policy." *See Lee v. City of Los Angeles*, 250 F.3d at 686. Additionally, the personal property package policy is not a narrowly tailored measure that furthers a compelling governmental interest sufficient to satisfy the strict scrutiny standard. *See Johnson v. California*, 543 U.S. at 505, 125 S.Ct. 1141. Plaintiff has adequately alleged that Defendant Small violated his Fourteenth Amendment rights.

#### b. Whether the right was clearly established

■ The law governing the Defendants Small's conduct—Davis's right to be free from invidious discrimination on the basis of his religion—was clearly established. *Cruz v. Beto*, 405 U.S. at 321–22, 92 S.Ct. 1079. Prison officials cannot discriminate

on the basis of religion and must provide inmates with a reasonable opportunity to pursue their faith. *Id.* at 322, 92 S.Ct. 1079.

■ A reasonable prison official in Warden Small's position would know that the claimed conduct was unlawful. The policy addendum allegedly lists only Muslim religious articles as items that must be counted as quarterly packages; only Muslim inmates would therefore be unable to place special orders for both religious and other personal items, while other inmates could order both. A reasonable official would know that treating inmates of one faith differently from inmates of another faith was unconstitutional. *See Ass'n of Christian Schs. Int'l,* 362 Fed.Appx. at 646; *see also Bess v. Alameida,* No. CIV S–03–2498 GEB DAD P, 2007 WL 2481682, at *25–26, 2007 U.S. Dist. LEXIS 63871, at *73–74 (E.D.Cal. Aug. 29, 2007) (denying qualified immunity on equal protection grounds because it was clearly established that inmates have a right not to be intentionally treated differently because of their religion). The allegation that the listed items are only used by Muslim inmates suggests that Small acted with discriminatory intent when he created a policy that purportedly had a disparate impact on Muslim inmates. *See Navarro,* 72 F.3d at 716 n. 5 (stating that discriminatory intent can be shown if an official acts "because of" the adverse effects upon an identifiable group).

Further, Davis maintains that the discriminatory policy does not further a compelling interest. There is no evidentiary basis for determining whether a legitimate penological interest is the basis for the policy. Defendant Small would have known that implementing a policy that affects only Muslim inmates would be unconstitutional if it was issued solely for administrative convenience. *See Frontiero,* 411 U.S. at 690, 93 S.Ct. 1764 ("[A]ny statutory scheme which draws a sharp line between the sexes, *solely* for the purpose of achieving administrative convenience … involves the 'very kind of arbitrary legislative choice forbidden by the [Constitution] ….' ") (emphasis added) (citing *Reed v. Reed,* 404 U.S. 71, 76–77, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971)). Regardless, Defendant did not impose similar restrictions on religious items purchased by practitioners of other faiths. The total ban on prayer oil shortly after implementing the personal property package policy also indicates animus towards Muslim inmates at Calipatria. *See Watison,* 668 F.3d at 1114. Defendant Small is not entitled to qualified immunity at this stage in the proceedings. *See Groten,* 251 F.3d at 851. His Motion to Dismiss the equal protection claim regarding the September 2009 addendum on qualified immunity grounds should be **DENIED.**

## IV. CONCLUSION

Davis's references to violations of the California Code of Regulations are not separate causes of action. Defendants' Motion to Dismiss this portion of count two should be **GRANTED** without leave to amend.

The Plaintiff improperly includes several new causes of action in count two of his Second Amended Complaint. First, an amendment to include a retaliation claim in count two against Defendant Small for the addendum he approved on September 16, 2009, would not clearly be futile. The district court should treat this retaliation claim as properly asserted. Small's Motion to Dismiss this claim should be **DENIED.** A retaliation claim against Small for the October 25, 2010 policy, however, would be futile; this claim should not be considered. Small's Motion to Dismiss this claim should be **GRANTED** without leave to amend. Retaliation claims against Defendants Powell, Borem, and Ours for the September 2009 and October 2010 poli-

cies would also be futile. Their Motion to Dismiss both retaliation claims against them should be **GRANTED** without leave to amend. Second, Defendants Powell, Borem, and Ours's Motion to Dismiss the conspiracy causes of action against them in count two should be **GRANTED** without leave to amend; an amendment to include a conspiracy claim against Defendant Small would be futile, and the conspiracy claim against him should be **DISMISSED** without leave to amend. Third, Small's Motion to Dismiss the equal protection claim in count two regarding the September 16, 2009 policy addendum should be **DENIED**. An amendment to include an equal protection claim against Powell, Borem, and Ours for this policy would be futile and should be **DISMISSED** without leave to amend. Likewise, an amendment to include an equal protection cause of action against all Defendants based on the October 25, 2010 policy would be futile and should be **DISMISSED** without leave to amend.

The Motion to Dismiss the First Amendment and RLUIPA causes of action against all Defendants in count one should be **DENIED**; in count two, the Defendants' Motion to Dismiss the First Amendment and RLUIPA claims should be **GRANTED** without leave to amend.

All of the Defendants are entitled to qualified immunity for the First Amendment claims against them in count two, and their Motion to Dismiss Davis's claim for civil damages on this basis should be **GRANTED**. The Defendants are not, however, entitled to qualified immunity as to the First Amendment allegations in count one, and their Motion to Dismiss on this basis should be **DENIED**.

Defendants Ours, Powell, and Borem's Motion to Dismiss Plaintiff's claim for civil damages for the equal protection violation alleged in count two on qualified immunity grounds should be **GRANTED**. Defen-

dant Small is not immune from damages attributable to the equal protection claim against him in count two for the September 2009 policy. His Motion to Dismiss on this ground should be **DENIED**. Small is, however, entitled to qualified immunity for the equal protection claim against him in count two, focusing on the October 2010 addendum, and his Motion to Dismiss Plaintiff's claim for civil damages for this claim should be **GRANTED**.

This Report and Recommendation will be submitted to United States District Court Judge Cathy Ann Bencivengo, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties or before August 24, 2012. The document should be captioned "Objections to Report and recommendation." Any reply to the objections shall be served and filed on or before September 7, 2012. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir.1991).